721 So.2d 480 (1998)
STATE of Louisiana
v.
Garland G. GUIDROZ.
No. 98-KA-377.
Court of Appeal of Louisiana, Fifth Circuit.
October 14, 1998.
*482 Laurie A. White, New Orleans, Louisiana, for appellant, Garland G. Guidroz.
Paul D. Connick, Jr., District Attorney, Ellen S. Fantaci, Assistant District Attorney, Attorney of Record on Appeal, Terry M. Boudreaux, Assistant District Attorney, Research & Appeals, Richard C. Bates, Assistant District Attorney, Trial Attorney, Gretna, Louisiana, for appellee State of Louisiana.
Before GAUDIN, DUFRESNE and CANNELLA, JJ.
CANNELLA, J.
Defendant, Garland Guidroz, appeals from his conviction of aggravated incest (La. R.S.14:78.1) and his sentence of twenty years imprisonment at hard labor. We affirm the conviction, vacate the sentence and remand for re-sentencing.
By a bill of information defendant was charged on July 17, 1997 with aggravated incest upon his minor daughter, Melissa Guidroz. At his arraignment on July 23, 1997, defendant pled not guilty. On September 5, 1997, the state filed a Prieur notice of intent to use evidence of other crimes.[1] On September 15, 1997 a hearing was held in which the trial court ruled that the Prieur evidence would be admissible at trial, granted the state's motion to use the statement of defendant as evidence and denied defendant's oral motion to recuse the assistant district attorney.
Trial began on September 16, 1997. Prior to the commencement of trial, over defendant's objection, the trial judge permitted the state to amend the bill of information to reflect that the crime was allegedly committed from August of 1994 through June of 1997, rather than from August of 1994 through September of 1996, as originally charged. Following trial, the six-person jury found defendant guilty as charged.
On October 29, 1997, defendant filed a motion for a new trial, which was denied and he was sentenced to twenty years imprisonment at hard labor. On November 12, 1997, defendant filed a timely motion to reconsider sentence and a written motion for appeal. Defendant's motion to reconsider sentence was denied and his appeal granted on November 14, 1997.[2]
Melissa was eight years old at the time of trial. She testified that on June 20, 1997, she told her mother, Lisa Guidroz, that she had been molested by her father. Melissa testified that on several occasions defendant had touched "her mouth with his private." She stated that the defendant would put his penis in her mouth when she was kneeling and he was standing. Melissa testified that she was alone in the room with her father on the occasions when this happened, and that her mother was either out of the house, asleep or in the shower. The child said that she first remembered her father doing this to her when she was in kindergarten (when she was five or six years old) and continued until the summer of 1997, when she disclosed the facts *483 to her mother. She also testified that her father threatened to hurt her mother and her brother if she ever told anyone what he was doing.
Lisa Guidroz testified that she had been married to defendant for 15 years and that he was the biological father of her two children, Melissa, age eight, and Craig, age ten. She testified that for several months prior to that evening, Melissa had been having nightmares, crying for no apparent reason and was afraid to sleep alone. She stated that she found Melissa sitting in the hallway crying on June 20, 1995. Upon questioning the child as to what was wrong, Melissa told her that defendant was waking her at night and putting his "private" in her mouth. Based upon her conversation with Melissa, she and the two children left the house to go to her mother's house. Prior to leaving, she left defendant a note on the table telling him that she knew what he had done to Melissa. She said that defendant wrote a reply on the back of the note which she had left him.
Lisa Guidroz's note states:
"Dear Garland,
We have gone to my mama's house. I know what you have been doing to Melissa. I can't stay here anymore. I won't tell anybody what I know if you will agree to a divorce and support us till I can get a job. I'm sorry, but maybe you need to get some help.
Lisa"
Defendant's reply is as follows:
"Dear Lisa,
I don't deny what I've done, but please hear me out for what I am about to say. I don't know where to start, over the past few years I been going through I guess middle age thing. I've tryed (sic) my best to provide for you and the kids, I love you very very much and both of my kids, but the pressure of working all the time, bill and not having nothing is too much for me to deal with. I look to you for love and support and all I get is rejection and compliants (sic). I don't show my feeling that much but I still hurt. This problem I have comes from all this pressure of having to love you and having to live with the fact that you don't love me. I'm too old to start over, I gave you my heart and you and the kids are all I have left. Please understand what I'm trying to say. I don't know what else I can say but I'm sorry. I'm crying as I write this, please les (sic) try to work this out between us, I love my family.
Love, Garland
P.S. Please give me another chance or lets talk about it."
Lisa Guidroz testified that she spoke to defendant the next morning and told him that she knew that he was forcing Melissa to perform oral sex. She testified that defendant cried and said that he did not think he was hurting Melissa. She stated that at no time did defendant deny what he had done. She denied that she had been contemplating divorce at the time.
Detective Michael Carrone of the Jefferson Parish Sheriff's Office testified that he interviewed the minor victim, Lisa Guidroz and Craig Thornton about this case and that he was present for the child's interview at the Child Advocacy Center. He said that the child informed him that, on more than one occasion, her father put a "purple thing" in her mouth and that the purple thing was something which the defendant had. The detective testified that the incidents appeared to have happened between the summer of 1996 to the summer of 1997 and that the child identified the "purple thing" as a penis.
Defendant's nephew, Craig Thornton, a 22 year old college student, testified that defendant molested him from when he was 8 and ending when he was 10 years old during overnight visits to defendant's home. His mother and Lisa Guidroz are sisters and she periodically babysat he and his brother. He testified that several times during this period, defendant woke him during the night when he was sleeping, instructed him to get on his knees and told him to put defendant's exposed penis in his mouth. He testified that defendant's penis was erect at the time and that defendant would instruct him to "suck on his penis until ejaculation." He also related another occasion when defendant approached him and showed him pictures of *484 people engaged in oral sexual activity. He testified that on that occasion defendant put his mouth on his penis. He told the jury that on the above mentioned occasions, if he "swallowed" he would receive a drink and be allowed to go back to sleep. However, if he failed to swallow, defendant threatened to tell his parents that he didn't take his medicine, implying that he would get into trouble. The witness stated that he didn't tell anybody of defendant's actions at the time because he was frightened.
Defendant testified in his own behalf, denying that he ever forced either his daughter or Craig Thornton to perform oral sex. Defendant further testified that he and his wife had always had marital problems and that she had an affair during their marriage. Defendant agreed that, once in a while, prior to the allegations, his daughter had nightmares. He explained that Melissa was afraid of sleeping in her room because of shadows and the noise that the wind made. He claimed that the note he left on the table was written prior to his wife's note to him and related to buying a new truck. Defendant testified that he thought that Melissa was either coached or lying.
On appeal, defendant asserts first that the evidence was insufficient to support the verdict. Second, he asserts that the trial judge erred in denying the defense motion for the recusal of the Assistant District Attorney based on his personal interest in the case. Third, defendant contends that the trial judge violated defendant's constitutional rights by allowing the state to use other crimes evidence. Fourth, defendant asserts that the trial judge erred when he allowed the state to amend the bill of information just prior to trial to reflect a longer span of time in which defendant's offenses allegedly occurred. Fifth, defendant contends that his sentence of 20 years imprisonment at hard labor was excessive.
The standard for reviewing the sufficiency of evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and adopted by Louisiana in State v. Abercrombie, 375 So.2d 1170, 1177-1178 (La.1979), cert. denied, Abercrombie v. Louisiana, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). See also State v. Mussall, 523 So.2d 1305 (La.1988). In Jackson, the court held that due process requires the reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. Under Jackson a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt.
The defendant was convicted of LA.R.S. 14:78.1, aggravated incest. La.R.S. 14:78.1 provides:
A. aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, halfsister, uncle, aunt, nephew, or niece.
B. The following are prohibited acts under this Section:
1) Sexual intercourse, sexual battery, aggravated sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
Defendant argues that the evidence was insufficient to show that he engaged in any of the enumerated acts prohibited in Subsection B. He contends that the evidence was based solely on hearsay testimony. We disagree. The victim testified on direct examination that on several occasions defendant "touched her mouth" with "his private" and that "private" is the same thing as "penis". This is not hearsay testimony. The *485 jury apparently believed that the victim's testimony was credible. The credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Rowan, 97-21 (La.App. 5th Cir. 4/29/97), 694 So.2d 1052, 1056. The credibility of witnesses will not be reweighed on appeal. Id.
Defendant next contends that the trial court erred when it denied his motion for the Assistant District Attorney to recuse himself based on his personal interest in the case pursuant to La.C.Cr.P. art. 680, thereby denying appellant's right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Louisiana Constitution of 1974. Defendant argues that the Assistant District Attorney should have recused himself because he was a personal friend of the victim's family.
La.C.Cr.P. art. 680 states:
A district attorney shall be recused when he: (1) Has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice;
(2) Is related to the party accused or to the party injured, or to the spouse of the accused or party injured, or to a party who is a focus of a grand jury investigation, to such an extent that it may appreciably influence him in the performance of the duties of his office; or
(3) Has been employed or consulted in the case as attorney for the defendant before his election or appointment as district attorney.
Defendant argues that the Assistant District Attorney should have been recused under subsection (1) because he had a personal interest in the cause since he was a friend of the victim's grandparents. The Assistant District Attorney countered that, prior to that morning, he wasn't aware that the people he knew were the grandparents of the victim. He further stated that he knew the grandparents as acquaintances through his former wife, that he is divorced from that wife and had not seen these people for the last six or seven years. The following discourse took place:
The Court:
Well, absence [sic] of any other proof and based on the representation by Mr. Bates; who I think is a very honorable gentleman, the same as I think you are a very honorable lady, I'm going to rule that these persons are acquaintances of Mr. Bates, and, therefore, he does not have a personal interestMr. Bates does not have a personal interest such to recuse himself from this case.
Ms. Fuselier (defense attorney):
When I asked him before about recusing himself he said: why should he, because now I have even more reason to prosecute your client, because I know these people.
The Court:
Well, that sounds like coffee clotch conversation. And I'm not inclined to change my ruling based on any coffee conversation. I think that's sort of like a pre-game warmup where the tigers are getting ready to do battle, so to speak.[3]
In a motion to recuse the District Attorney, "the defendant bears the burden of showing by a preponderance of the evidence that the district attorney has a personal interest in conflict with the fair and impartial administration of justice." State v. Bourque, 622 So.2d 198, 216-217 (La.1993). This standard of proof is applicable for the disqualification of an Assistant District Attorney, but the grounds for disqualification are not necessarily restricted to the statutory grounds to recuse a District Attorney as set forth in La.C.Cr.P. art. 680. Id. Courts have required recusal under this article when it is shown that the District Attorney has a personal interest in defendant's case based upon a business relationship with the defendant, [State v. Hughes, 587 So.2d 31 (La.App. 2nd Cir.1991), writ denied 590 So.2d 1197 (La. 1992) ]; that the District Attorney had been victimized by the criminal activity subject to investigation [Parkerson v. Norris, 529 So.2d 1392 (La.App. 2nd Cir.1988), writ denied 530 *486 So.2d 552 (1988) ]; and where personal animosity exists between the District Attorney and defendant [State v. Snyder, 256 La. 601, 237 So.2d 392 (1970) ].
In this case, the Assistant District Attorney knew the victim's grandparents when he was married to his ex-wife. He had not seen them for six or seven years and did not know that they were the victim's grandparents until the morning of trial. This facts do not rise to the level of personal interest required for the Assistant District Attorney to recuse himself. Thus, we find that, under these circumstances, the trial judge did not err in refusing to recuse the Assistant District Attorney.
In his third assignment of error, defendant contends that the state's use of Craig Thornton's testimony was the impermissible use of other crimes evidence under La.C.E. art. 404(B), which violated his Due Process and Equal Protection rights under the Ninth and Fourteenth Amendments to the United States Constitution and Article I, Section 2 and 16 of the Louisiana Constitution of 1974. Defendant argues that the evidence presented by Craig Thornton only served the purpose of proving bad character and that its prejudicial effect substantially outweighed its probative value.
Generally, evidence of other acts of misconduct is not admissible; however, there are statutory and jurisprudential exceptions to this rule. State v. Jackson, 625 So.2d 146, 148 (La.1993). La.C.E. art. 404(B)(1) provides in pertinent part:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding
One of these factors must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible. State v. Jackson, 625 So.2d at 149. Even if independently relevant, the probative value of such evidence must be weighed against its prejudicial effect. La.C.E. art. 403; State v. Jackson, 625 So.2d at 148.
The state is required to prove that defendant committed the other act(s) by a preponderance of the evidence. La.C.E. art. 1104; Huddleston v. U.S., 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).[4] Under the requirements set forth in State v. Prieur, 277 So.2d 126 (La.1973), for the admission of other crimes evidence, the state must provide written notice of its intent to use other acts or crimes evidence and describe these acts in sufficient detail within a reasonable time before trial. State v. Jackson, 625 So.2d at 149. The state must also show that the evidence is neither repetitive nor cumulative and that it is not being introduced to show that defendant is of bad character. State v. Prieur, 277 So.2d 126 (La.1973); State v. Jackson, 625 So.2d at 149. At the request of defendant, the trial court must offer a limiting instruction to the jury at the time the evidence is introduced and must charge the jury at the close of the trial as to the limited purpose for the other crimes evidence and that defendant cannot be convicted for any crime other than the one charged or any responsive offenses to it. Id.
The fact that the other acts or crimes happened some time before the offense for which defendant is on trial is not sufficient, in and of itself, to require the exclusion of the evidence. State v. Jackson, *487 625 So.2d at 149. In most cases, remoteness in time is only one factor to be considered when determining whether the probative value of the evidence outweighs its prejudicial effect. Id. Generally, a lapse in time will go to the weight of the evidence, rather than to its admissibility. State v. Jackson, 625 So.2d at 148.
Defendant argues that the state failed to show that the evidence was being introduced for a purpose other than to show the bad character of defendant. In its Prieur notice, the state asserted intent, system, motive and knowledge as the basis for admitting Craig Thornton's testimony at trial.
At the Prieur hearing, held on September 15, 1997, Craig Thornton testified that when he was about 8 years old he would periodically be placed under the care of defendant and Lisa Guidroz. He told the trial court that on approximately 6 occasions, after he was put to bed at night, defendant would come and wake him, telling him that it was time to "take his medicine." He testified that defendant would "expose his penis and at that time he would want me to get down on my knees and insert that into my mouth ... he would want me to suck on it."[5] He further told the trial court about one incident where defendant showed him pornographic pictures and defendant "put his mouth on my [Craig's] penis." Craig Thornton told the trial court that defendant threatened that if he failed to swallow defendant's semen that defendant would tell his parents that he wasn't behaving properly, but that if he swallowed, he would be rewarded with something to drink afterwards. Craig Thornton testified that he did not tell anyone about the incidents because he was embarrassed and thought he would get into trouble. He told the court that he maintained silence as he grew older because he was afraid a stigma might be attached to such an event.
In State v. Boudreaux, 95-153 (La.App. 5th Cir. 9/20/95), 662 So.2d 22, 24, writ denied, 694 So.2d 233 (La.1997), this court held that, in child abuse cases, the evidence of sex crimes with a child, other than the victim, can be used to show motive, system, opportunity and plan, using the guidelines set forth in State v. Prieur, 277 So.2d 126 (La.1973). See also: State v. Hanks, 593 So.2d 971, 973 (La.App. 5th Cir.1992); State v. DeRoche, 629 So.2d 1267, 1270-1273 (La.App. 5th Cir.1993). The Boudreaux court held that evidence of previous sexual assaults were admissible because the assaults were committed in the same time period and because the attacks were similar. State v. Boudreaux, 662 So.2d at 27.
Additionally, in State v. Jackson, 625 So.2d 146 (La.1993), the Louisiana Supreme Court permitted defendant's three adult daughters to testify concerning sexual acts performed on them by their father years before. The Jackson court held that the evidence was admissible to show that defendant had intent and did not act innocently. The court in Jackson also held that the other crimes evidence was admissible to show system and plan where there were similarities between molestations.
In the instant case, there are similarities between the types of sexual attacks, with both involving the victim being required to perform oral sex on defendant. Additionally, both victims were approximately the same age when the incidents occurred, both were threatened and the molestations happened in defendant's home. Craig Thornton was molested while others at home were sleeping. Melissa was molested while her mother was sleeping, in the shower or at the store. The similarities between the molestations show that the acts were not isolated incidents, but were part of a plan or system that defendant had developed in order to have sex with his juvenile relations. Consequently, we find that the evidence is independently relevant and admissible to show intent and plan.
Defendant argues that, nonetheless, the probative value of the other crimes evidence did not outweigh its prejudicial effect. The Jackson court, noting that "all evidence which tends to make it more probable than not that an individual committed a criminal offense is necessarily prejudicial," held that because of the similarities, the probative value *488 of testimony regarding defendant's prior sexual relations with his daughters outweighed its prejudicial effect. We find likewise in this case, that the probative value of the evidence outweighs its prejudicial effect. Thus, the trial judge did not err in admitting the testimony of Craig Thornton.
Even if we were to find differently, the admission would be harmless error. See: State v. Johnston, 94-1379 (La.11/27/95), 664 So.2d 94, reconsideration denied, 94-1379 (La.4/8/96), 671 So.2d 332; State v. Pittman, 95-382 (La.App. 5th Cir. 10/1/96), 683 So.2d 748, 758-759. The analysis for determining harmless error is whether the verdict actually rendered in this case was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), on remand, 623 So.2d 1315 (La.1993); State v. Pittman, 683 So.2d at 758-759. In light of the other testimony offered by the victim in this trial, we find that the admission of the evidence, if inadmissable, was harmless error since the jury surely could have convicted defendant solely on the victim's testimony.
In his fourth assignment of error, defendant asserts that the trial judge erred by allowing the state to amend the bill of information just prior to trial to reflect a longer span of time in which defendant's offenses allegedly occurred. The bill of information originally asserted that the aggravated incest occurred from August of 1994 to September of 1996. The amendment asserts that the offense occurred from August of 1994 to June of 1997. The trial court allowed the bill to be amended without giving the defense a continuance. However, the record reflects that, although defendant objected to the amendment, he did not ask the trial court for a continuance. When a bill of information is amended, a defendant may be entitled to a continuance if he can show he has been prejudiced in his defense.
La.C.Cr.P. art. 489 provides as follows:
If it is shown, on motion of the defendant, that the defendant has been prejudiced in his defense on the merits by the defect, imperfection, omission, uncertainty, or variance, with respect to which an amendment is made, the court shall grant a continuance for a reasonable time. In determining whether the defendant has been prejudiced in his defense upon the merits, the court shall consider all the circumstances of the case and the entire course of the prosecution. If it becomes necessary to discharge the original jury from further consideration of the case, the trial before a new jury will not constitute double jeopardy.
The purpose of a continuance is to prevent prejudicial surprise to defendant. Defendant has the burden to establish that an amendment to a bill of information has prejudiced his defense so as to necessitate a continuance. State v. Schaefer, 97-465 (La. App. 5th Cir. 11/25/97), 704 So.2d 300, 303.
Both at trial and on appeal, defendant has failed to show specifically how the amendment prejudiced his defense, other than stating that the amendment was made at the last minute. As a result, we find that the trial court did not err by allowing the bill of information to be amended.
In defendant's fifth assignment of error, he asserts that his sentence of 20 years imprisonment at hard labor was excessive.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Hubb, 97-304 (La.App. 5th Cir. 9/30/97), 700 So.2d 1103, 1105; State v. Lobato, 603 So.2d 739, 751 (La.1992). A sentencing is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hubb, 700 So.2d at 1105. Even a sentence within the prescribed statutory limit may violate a defendant's right against excessive punishment. Id; State v. Sweeney, 443 So.2d 522, 531 (La. 1983). Once imposed, a sentence will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence *489 within mandatory statutory limits. State v. Hubb, 700 So.2d at 1105.
The Louisiana Supreme Court addressed the issue of sentencing in State v. Robicheaux, 412 So.2d 1313, 1319 (La.1982), noting:
Trial judges are granted great discretion in imposing sentences, but even sentences within statutory limits may be excessive under certain circumstances. State v. Jones, 398 So.2d 1049 (La.1981); State v. Spencer, 374 So.2d 1195 (La.1979). Sentences must be individualized to be compatible with the offenders as well as the offenses. In deciding whether to confine a defendant or grant probation, the judge must consider certain factors enumerated in La.C.Cr.P. art. 894.1(A),(B). State v. Jones, supra. This article entitles the defendant to such an articulation and represents a legislative attempt to guide the trial judge in thoughtfully imposing an appropriate sentence under the facts and circumstances of the particular case. Also this serves as an important aid to this court when called upon to exercise its constitutional function to review a sentence complained of as excessive. State v. Ramos, 390 So.2d 1262 (La.1980).
In the instant case, the trial judge noted that he considered both the La.C.Cr.P. art. 894.1 sentencing guidelines and defendant's pre-sentence investigation as a basis for his decision. In imposing sentence, the trial judge stated:
I have examined the sentencing guidelines as well as the presentence investigation report and I am imposing the sentence under Article 894.1. I believe the applicable provisions are: 894, A, 1, 2, 3 and Under Section B, 1,2,,,4,6,9,11, and 12.
You are an indigent, so a fine is not appropriate. Also, I don't see any foreseeable ways you could pay for any reasonable cost of counseling the victim in this case, so I can't impose any assessment for that. However, there is a provision to impose a prison term and for the reasons contained in the file relative to the presentence investigation report and for the reasons that I heard during this trial, I feel that it is a very despicable event that you participated in, that you initiated, that you encouraged and continued over a very long period of time. So I'm going to insure that you'll not be released from prison until this victim is at least of an age to protect herself in the future so you are sentenced to twenty years at hard labor with the Department of Corrections. And if by chance you are permitted to be released from prison prior to serving the entire twenty years, then you'll be required to notify or comply with all of the sex violation notification crimes, also known as the Scarlet letter....[6]
A remand for more complete compliance with C.Cr.P. art. 894.1 is not necessary when the record otherwise clearly illumines the sentencing choice. State v. Martin, 400 So.2d 1063 (La.1981), on rehearing.
In the present case, La.R.S. 14:78.1 provides:
A person convicted of aggravated incest shall be fined an amount not to exceed fifty thousand dollars, or imprisoned, with or without hard labor, for a term not less than five years not more than twenty years, or both.
Defendant has no prior criminal history. However, the cases reflect several examples of defendants without criminal histories receiving similar sentences.
The Second Circuit, in State v. Rubalcava, 28,325 (La.App.2nd Cir. 5/8/96), 674 So.2d 1035, upheld a 20 year sentence for aggravated incest where the defendant had fondled and performed oral sex upon his 8 year old step-granddaughter. In State v. Blue, 591 So.2d 1173 (La.App. 1st Cir.1991), the First Circuit held that, although defendant's conduct did not cause any physical harm to the victim, the charge resulted from a single incident and defendant had no prior criminal history, a 12 year sentence was not excessive upon a conviction for molestation of a juvenile. The trial court noted that the event caused emotional trauma to the victim, defendant's daughter. However, the Louisiana Supreme Court in State v. Blue, 591 So.2d *490 1172 (La.1992), overturned the decision, holding that: "the record of sentencing does not demonstrate adequate compliance with LSA-C.Cr.P. art. 894.1 nor provide a factual basis for imposition of a near maximum term of imprisonment for the defendant, a first offender convicted for a single incident of molestation."
In State v. Orgeron, 620 So.2d 312 (La. App. 5th Cir.1993) this Court concluded that concurrent sentences of 20 years imprisonment at hard labor for forcible rape, 20 years for aggravated oral sexual battery, and 15 years for molestation of a juvenile were not excessive. In imposing the sentences, the trial judge noted that defendant was the victim's stepfather, held a position of authority over her, the victim suffered serious emotional problems because of the assault and that defendant's mother was made aware of the abuse and chose to do nothing about it. Similarly in State v. Anderson, 95-1688 (La. App.3rd Cir. 5/8/96), 677 So.2d 480, the court held that two concurrent 15 year sentences for a first time offender convicted of aggravated incest were not excessive. The Anderson court found that the sentences were not excessive when the victim was defendant's fourteen year old stepdaughter and some of the acts were committed when the victim's mother was away. Recently, in State v. Downs, 30,348 (La.App.2nd Cir. 1/21/98), 705 So.2d 1277, 1279, the Second Circuit held that a maximum sentence is appropriate for an offender who sexually abuses his minor child or stepchild.
In this case, defendant sexually abused his young biological daughter over a two to three year period, requiring on-going long-term psychological treatment. The trial judge considered the facts of the case, the testimony at trial, the sentencing guidelines and the pre-sentence investigation report. Defendant showed no remorse. The trial judge concluded that defendant's conduct was despicable and he wanted to assure that defendant remain in jail until the victim was of an age to protect herself from him. Considering defendant's crime and the applicable jurisprudence, we find that the trial judge did not abuse his discretion in imposing the maximum sentence on this defendant.

ERROR PATENT DISCUSSION
La.C.Cr.P. art. 920 provides: "the following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Boudreaux, 95-153 (La.App. 5th Cir. 9/20/95); 662 So.2d 22, 28; State v. Gaines, 97-672 (La.App. 5th Cir. 2/25/98), 707 So.2d 1354, 1359.
We note three patent errors. First, the record reflects that the trial court erred by sentencing defendant immediately, upon denying his motion for a new trial, without obtaining a waiver of the statutory delay from defendant. Prior to sentencing, defendant filed a written motion for new trial. On October 29, 1997, the trial court denied the defendant's new trial motion. Immediately after denial of the new trial motion and a brief discussion with the defendant, the trial court imposed sentence.
La.C.Cr.P. art. 873 provides:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, a sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
In State v. Forrest, 95-31 (La.App. 5th Cir. 2/14/96), 670 So.2d 1263, writ denied, 96-0654 (La.6/28/96), 675 So.2d 1117, we held that an error in sentencing a defendant without a 24 hour delay was harmless where defendant neither complained of the sentence or *491 claimed to have been prejudiced by the mistake. See also: State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied,___ U.S. ___, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997) where the Louisiana Supreme Court held that, absent a showing that prejudice resulted from the delay, reversal of the prematurely imposed sentence was not required. However, the sentence there was mandatory.
In State v. Avila, 563 So.2d 990 (La.App. 5th Cir.1990), this Court held that where the defendant challenges the penalty imposed, we cannot consider the violation of the 24 hour mandate to be considered harmless error and remanded the case for re-sentencing. In the instant case, like in Avila, defendant alleges that his sentence was excessive. Because defendant complains of his sentence, we vacate the sentence and remand the case for re-sentencing.[7]
Accordingly, we hereby affirm defendant's conviction, vacate the sentence and remand for re-sentencing pursuant to this opinion.
CONVICTION AFFIRMED; SENTENCE VACATED; REMAND FOR RESENTENCING.
NOTES
[1] State v. Prieur, 277 So.2d 126 (La.1973),
[2] The state argues that defendant's appeal is untimely because it was filed more than the five days after defendant's sentencing. La.C .Cr.P. art. 914. However, defendant's appeal was granted on November 15, 1997, after the trial court's denial of his motion to reconsider sentence. La.C.Cr.P. art. 914(2) also states that a motion for appeal must be made no later than five days from the ruling on a motion to reconsider sentence, pursuant to Article 881.1, should such a motion be filed.

Accordingly, defendant's motion, granted within five days after the denial of his motion to reconsider is timely.
[3] R., p. 68.
[4] LSA-C.E. art. 1104, enacted in 1994, requires that the burden of proof for a Prieur hearing in Louisiana be identical to that required by the Federal Rules of Evidence Art. IV, Rule 404. Huddleston v. U.S., 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) interprets the federal rule. Huddleston states that the clear and convincing standard is no longer required as the standard of proof. The Huddleston court held that evidence of prior convictions need only be proved by a preponderance of the evidence.
[5] R., p. 73.
[6] R., pp., 279-280.
[7] The second error we note is that the trial judge failed to advise defendant of the three-year time limit for filing an application for post conviction relief, as required by La.C.Cr.P. art. 930.8. In light of our remand for re-sentencing, we need not address this oversight.

Third, defendant was not given credit for time served, as is required by La.C.Cr.P. art. 880. However, a recent amendment to the article makes any action from this court unnecessary. As of August 15, 1997, the article reads, "[a] defendant shall receive credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence." 1997 La. Acts 788 § 1. The provision is self-operating. Id.