STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-1266

STATE OF LOUISIANA

VERSUS

JERRY VAUGHN CLIFTON

**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 80351
HONORABLE JAMES RICHARD MITCHELL, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.

AFFIRMED.

Elvin Fontenot
Attorney At Law
110 East Texas Street
Leesville, LA 71446
(337) 239-2684
COUNSEL FOR DEFENDANT-APPELLANT:
	Jerry Vaughn Clifton

Asa Allen Skinner
District Attorney, Thirtieth Judicial District
Terry W. Lambright
Assistant District Attorney
P. O. Box 1188
Leesville, LA 71496-1188
(337) 239-2008
COUNSEL FOR APPELLEE:
	State of Louisiana

**PICKETT, Judge.**

## FACTS

In 2001, the defendant, Jerry Vaughn Clifton, allegedly touched the vaginal area of his eleven-year-old step-granddaughter L.G.[1] In a separate incident the same year, he allegedly instructed his six-year-old step-granddaughter A.G. to remove her clothes, then laid her on a bed and licked her vaginal area and chest.

On December 13, 2010, the State filed a bill of information charging the defendant Jerry Vaughn Clifton a.k.a. Jerry V. Clifton a.k.a. Jerry Clifton with six counts of aggravated incest, violations of La.R.S. 14:78.1. Later, the state amended the bill by adding language to Count 1, dismissing Count 3, and renumbering Counts 4 and 5.

Jury selection began on March 17, 2014. It was resumed and completed on March 19. The jury began hearing evidence on the latter date. On March 21, the jury found the defendant guilty as charged on the first two counts.

On May 13, 2014, the court sentenced the defendant to serve sixty-one months at hard labor on each count, to run consecutively. The court denied his motion for post-verdict judgment of acquittal and his motion to reconsider sentence.

## ASSIGNMENTS OF ERROR

1. The Trial Court erred when it denied the defense's challenges for cause of Juror Christopher Bliss, Juror # 61, and Juror Sharon Raetta Harvey.

2. The Trial Court erred in denying defendant's post verdict judgment of acquittal.

---

[1] Initials are used for the privacy of the minor victims, in accordance with La.R.S. 46:1844(W). " L.G." is the designation of one the victims in the information; she was "L.P." at the time of the trial.

3.    The Trial Court erred in imposing a sentence herein that is excessive and unconstitutionally harsh.

4.    For any and all errors patent on the face of the record.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record.  After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR NUMBER TWO

We will address the second assignment of error first, because it necessarily addresses the sufficiency of the evidence.  A finding that the evidence was insufficient would necessitate reversal of the conviction, thus this assignment must be resolved first.  *State v. Hearold*, 603 So.2d 731 (La.1992).

The defendant argues the district erred by denying his motion for post-verdict judgment of acquittal.  Such motions are governed by La.Code Crim.P. art. 821(B), which states: "A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty."

The analysis for such claims is well-settled:

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981).  It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review.  See *State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228

2

(La.1983)).  In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

At the time of the offenses in 2001, the elements of aggravated incest were set forth in La.R.S. 14:78.1, which stated in pertinent part:[2]

> A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
>
> B. The following are prohibited acts under this Section:
>
> (1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile or a person with a physical or mental disability, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
>
> (2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.

The basic allegation was that the defendant touched the vaginal areas of the two minor victims, who were his step-granddaughters. He also committed other sexual acts with them.

The core of the defendant's claim is that the testimony of the state's witnesses was inconsistent and incredible.  As an example, he notes that A.G. testified that her initial report to her older friend Jennifer Behan resulted from seeing a program about sex offenses.  However, Behan testified they had seen a movie earlier.  The defendant also notes that A.G. did not report the incident until

---

[2]The aggravated incest statutes have been repealed; the elements now appear in other statutes.

approximately nine years after the offense. The defendant also notes that A.G. admitted in her taped statement to a detective that she did not like her grandfather and that he did not threaten her to keep her quiet. The defendant also claims that the record shows that the investigating detective, Rhonda Jordan, suggested answers to A.G. during their interview.

The other victim, L.G., reported the defendant's actions years after they occurred, having heard of A.G.'s report. Initially, she denied having been victimized. At trial, she explained her denial by noting that she was in shock at the time. L.G. testified that the defendant touched her in the vaginal area and that three other times he masturbated in front of her.

The defendant characterizes the victims' testimony as vague and cites *State v. Wiltcher*, 41,981 (La.App. 2 Cir. 5/9/07), 956 So.2d 769, for the proposition that self-contradictory testimony is insufficient to support a conviction. We note that case's language:

> In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Burd*, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, *writ denied*, 2006-1083 (La.11/9/06), 941 So.2d 35.

> The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. *State v. Casey*, 1999-0023 (La.1/26/00), 775 So.2d 1022, *cert. denied*, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).

*Id.* at 773.

The defendant notes that L.G.'s diary, which included events from the relevant time period, did not include any mention of the offenses at issue. The defendant also observes that the jury acquitted him on three counts, and he argues

4

that this is an indication that L.G. lacked credibility. It is equally plausible, however, that the jury's decision to convict on two counts, but not the other three, indicates that it took a careful approach to assessing the evidence. Further, as noted, in *Kennerson* and *Wiltcher*, credibility is a matter for the factfinder at trial.

This court has stated:

> As mentioned in *Kennerson*, credibility assessments are within the province of the fact-finder, in this case the jury. A jury may "accept or reject, in whole or in part," any witness's testimony. *State v. Silman*, 95-0154, p. 12 (La.11/27/95), 663 So.2d 27, 28. Clearly, the jury believed the victim's version of events, and [the defendant's] brief offers no concrete reason why the jury's conclusion should be considered unreasonable. This court will overturn a jury's credibility assessment only when a witness's own testimony demonstrates that the witness's ability to perceive events was impaired in some way. *See, e.g., State v. Bourque*, 94-291 (La.App. 3 Cir. 11/2/94), 649 So.2d 670, wherein one eyewitness had consumed a large amount of alcohol before the offense and the other was a minor who believed all white men looked alike, and defendant was white.

*State v. Hypolite*, 04-1658, pp. 4-5 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, 1279, *writ denied*, 06-618 (La. 9/22/06), 937 So.2d 381.

The defendant fails to show any concrete reason why the jury's credibility assessment in the present case was unreasonable. Also, neither witness's testimony indicates that her ability to perceive events was impaired at the time the relevant events occurred.

For the reasons discussed, this assignment lacks merit.

<u>**ASSIGNMENT OF ERROR NUMBER ONE**</u>

In his first assignment of error, the defendant argues the district court erred by denying his challenges for cause against three venire members: Christopher Bliss, "Juror #61," and Sharon Raetta Harvey. He cites La.Code Crim.P. art. 797, which states in pertinent part:

5

(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict[.]

Also, the defendant notes that prejudice is presumed when a defendant exhausts his peremptory challenges and a trial court erroneously denies a challenge for cause. *State v. Ross*, 92-2208 (La.1993), 623 So.2d 643. The record shows that the defendant used all of his peremptory challenges. The state cites other jurisprudence:

> If a juror expresses a predisposition regarding the outcome of a trial, a challenge for cause should be granted. *State v. Lee*, 559 So.2d 1310, 1318 (La.1990). A trial court is vested with broad discretion in ruling on challenges for cause, and these rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. *State v. Blank*, 04-0204, p. 25 (La.4/11/07); 955 So.2d 90, 113; *State v. Cross*, 93-1189, pp. 6-7 (La.6/30/95); 658 So.2d 683, 686-87. A prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause, and a district judge's refusal to excuse him on the grounds of impartiality is not an abuse of discretion, if after further questioning the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. *State v. Kang*, 02-2812, p. 5 (La.10/21/03); 859 So.2d 649, 653 (citing *Lee*, 559 So.2d at 1318; *State v. Baldwin*, 388 So.2d 664, 671-72 (La.1980), *cert. denied*, 449 U.S. 1103, 101 S.Ct. 901, 66 L.Ed.2d 830 (1981); *State v. Allen*, 380 So.2d 28, 30 (La.1980). But a challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render a judgment according to law may be reasonably implied. *Kang*, 02-2812 at 5, 859 So.2d at 653; *State v. Hallal*, 557 So.2d 1388, 1389-90 (La.1990).

*State v. Dorsey*, 10-216, pp. 23-24 (La. 9/7/11), 74 So.3d 603, 622-23, *cert. denied*, __ U.S. __, 132 S.Ct. 1859 (2012).

6

Regarding venireman Bliss, the defendant notes that he expressed doubt regarding whether he could render an impartial verdict. Also, he stated that he had two daughters and if he heard "somebody touched them [he] would be on trial for murder." We note the final colloquy the attorneys had with Bliss:

[MR. FONTENOT, Defense Counsel:]

Q.    Okay. And you believe because of the nature of the charge that you wouldn't be able to apply the law that the Judge gives you concerning the presumption of innocence in this case?

A.    I wouldn't really know about that.

Q.    Well, that, that was your response when you were questioned earlier. You said -- when Mr. Anderson asked you a number of questions, your answer was "I don't know." And, I mean, obviously, we want people that know what they're going to do one way or the other. And -- but I, I gather from what you're telling me, Mr. Bliss, that, that it would be difficult for you to be fair and impartial to Mr. -- to Mr. Clifton in this case?

A.    Probably so.

Q.    Okay. And you can't assure me that whatever feelings that you have wouldn't play some part in you reaching a decision in this case, is that correct?

A.    I'm -- that -- this, this case just aggravates me. I mean, I -- hearing what's going on.

Q.    Okay. Do you have any, any family members who are in law enforcement?

A.    Yeah, my, my brother was a cop in Zwolle.

Q.    Are you from Sabine Parish originally?

A.    Yes, sir.

Q.    How long you been here in Vernon?

A.    About 20 years. I moved down here when I --

Q.    Oh, you've been here a long time.

A.    Yeah, I moved down here with my wife.

7

Q.    And how many children do you have?

A    Two.

Q.    Okay. Now, what are their ages?

A.    18 and nine.

Q.    Okay.  They still at home with you?

A.    Yes, sir.

BY MR. FONTENOT:

I don't have any further questions for Mr. Bliss, Judge.

BY MR. ANDERSON [Prosecutor]:

Q.    Mr. Bliss, thank you for your candidness in this case. I don't think there's a person in here that doesn't have the same feelings that if something happened to their child, they would have the same feelings you have.  But that's really not the question that you're having to make today, whether or not what you would do if you were put in that position.  What you're here for is -- as a juror, is to decide, if you're chosen, the guilt or not guilty position of the defendant, do you understand that?

A.    Yes, sir.

Q.    And the Judge will instruct you of what the law is and he'll tell you what that law is. And [A.G.] and [L.G] and the Sheriff's Department witnesses, Rhonda Jordan, and all these: people have to come up to this stand and put on evidence and give  testimony.  Now, what I need to know is, is that can you make the decision based on guilt or innocence from the facts that come from that witness stand, not just because of what the charge and -- which offends everybody, I'm sure, in here and I'm sure you too.  The question is can you be fair and impartial and listen to the facts and make a decision based upon the facts that come from that witness stand?

A.    Yeah.

Q.    Okay. You can put aside the fact that you might get upset because of what you might hear about it, but you can put that aside, your own personal feelings, and make decisions concerning the facts of this case?

A.    Yes, sir.

8

Q. Okay. Now, you indicated you had a -- two girls that are -- a nine-year-old and a 18-year-old on your questionnaire?

A. Yes, sir.

Q. And, certainly, everybody could understand a father's concern about this type of case.

A. Yes, sir.

Q. But the question's going to be again, beyond a reasonable doubt, if that evidence comes from that witness stand, can you give me assurance that if it satisfies you that he committed this crime, the defendant in this case, that you can return a verdict of guilty?

A. Oh, yes, sir.

Q. Okay.

BY MR. ANDERSON:

That's all the questions I have of this one.

BY MR. FONTENOT:

Q. I just have a couple -- a couple of questions for Mr. Bliss because I'm -- now, Mr. Bliss, I understand you can return a verdict of guilty, that's not a question. We, we know what you -- how you feel about that. But I think the issue is if the Judge tells you that if you -- if that evidence doesn't convince you beyond a reasonable doubt, you have an obligation to find him not guilty, and, and you told me that you didn't -- you'd have a hard time doing that and now you're telling Mr. Anderson you could do that. So, which, which one is it?

A. I'd have to hear everybody's side of the story because I don't know none, none -- him or nobody else in here.

Q. Well, let me ask you a question. Suppose you were sitting in that chair and you were Mr. Clifton, would you want to be on that jury?

A. No.

BY MR. FONTENOT:

I don't have any other questions.

When the defendant later challenged Bliss for cause, the state argued that he had been rehabilitated. The trial court recalled that he had stated he could be fair,

9

and it denied the challenge. The defendant then used a peremptory challenge on Bliss. Although some of Bliss's responses indicate he would have had trouble viewing the evidence in an impartial manner, his responses in the colloquy above gave the trial court a reasonable basis for denying the challenge for cause. Further, we do not find that the district court abused its discretion. Therefore, the defendant's argument regarding Bliss lacks merit.

"Juror 61" is identified as Janet Durbin in the minutes. As the state points out, the defendant ultimately accepted Durbin after his challenge for cause was denied. The record reflects that he had at least one peremptory challenge left at that point. Further, after eleven jurors had been seated, the court realized this was a matter to be tried before a jury of six jurors. By agreement, the court allowed defense counsel to pick six jurors and two alternates from the eleven seated jurors to serve as the jury. Defense counsel chose Durbin as one of the six to serve. Therefore, his argument regarding Durbin lacks merit.

The third venire member at issue in the defendant's assignment of error is Sharon Raetta Harvey. The defendant used his last peremptory challenge to exclude her. He observes that she is a friend of the district attorney of Vernon Parish and his chief investigator, as well as the parish sheriff. The defendant acknowledges that Harvey stated she could be impartial, however, he argues this is unlikely due to the friendships just listed. Thus, he argues the trial court erred by denying his challenge for cause. The state observes that Harvey repeatedly stated that she would be impartial. We note the following colloquy from her examination:

[MR. FONTENOT:]

Q.     I try to stay out of people's business that I consider to be my friends or I have a relationship with. That's the concern I have, not that you're going to intentionally do anything but that, that in the back of your mind, you know, Asa has a job to do. He sent Mike over here to do his part out of his office and the Sheriff's Department, obviously, they made an arrest and they, you know, they have an interest in the -- all these people have an interest in this case, you know. Asa brought this case. He -- now, he didn't sign the bill of information, somebody from his office did, but his office decided to bring these, these charges.

A.     Yes, sir.

Q.     Not the Sheriff, but the District Attorney's Office. So, if the -- they certainly have an interest in not losing the case that they thought that they had sufficient evidence to prosecute. So, does that, that pose any kind of conflict, you think, for you in some respects?

A.     I like to think that I'm strong enough and opinionated enough that I would make my own opinion, my own decisions. Do I respect the Hagans? Absolutely. Do I respect Asa? Absolutely. But I like to think that I'm strong enough to make my own opinions.

Q.     And, and that's, that's, I guess, the crux of the question because if, if you're not convinced beyond a reasonable doubt, the concern is that, that relationship may, you know -- you know, say this is where you're at that it's going to get you where --

A.     Right.

Q.     -- where you can't make that decision.

A.     Right.

Q.     In other words, well, they wouldn't have brought those charges if there wasn't something to it. I mean, you know, Asa's a, you know -- you know, he wouldn't he wouldn't be prosecuting somebody unwarranted. He --

A.     Yes, sir.

Q.     Like, like you were wrongly -- wrongfully accused but it wasn't here, it was somewhere else.

A.     Right.

Q.     So, that's the concern and, I mean, I think you're going to -- going to do whatever you think you need to do to do the right thing. The concern is the relationships and what effect, if any, that may have

11

and you may, may not be able to tell me as you sit here because you haven't started hearing the case and you don't know what the evidence is.

A.     Correct.

Q.     Okay. So, let me ask you this.

A.     Okay.

Q.     If you were Mr. Clifton and you were sitting in that, that juror's chair, would you want me to pick you as a juror in this case?

A.     Yes.

Q.     Okay. Fair enough, okay. Thanks. I don't have any other questions.

BY MR. ANDERSON:

Q.     Ms. Harvey, your son has a pending custody case with his ex-wife, right?

A.     Absolutely.

Q.     And I represent her, correct?

A.     Yep.

Q.     Can you put the microphone up?

A.     Yes, you do.

Q.     And if you were chosen as a juror and I'm the prosecutor in this case, would that affect your decision from what evidence comes from that witness stand?

A.     Absolutely not. My feelings for her has no bearings on my feelings for anyone else.

Q.     Correct. So, what she may present in that case doesn't have anything to do with this case, does it?

A.     Correct.

Q.     I've dealt with you for years, haven't I?

A.     Yes, sir.

Q. And you and I haven't ever had any problems, have we?

A. No, sir.

BY MR. ANDERSON:

I don't have any other questions.

In light of the jurisprudence cited in the discussion of venire member Bliss, the trial court's decision to deny the defendant's challenge for cause could not logically be characterized as an abuse of discretion. For that reason, the argument regarding venire member Harvey lacks merit.

For the reasons discussed, this assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER THREE

In his third assignment of error, the defendant argues that his consecutive sixty-one month sentences are excessive. The sentencing range for aggravated incest in 2001 was five to twenty years. La.R.S. 14:78.1(D).[3] He filed a written motion to reconsider sentence, alleging his sentences were excessive. The district court denied the motion. The analysis for excessive-sentence claims is well-established:

> The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. " '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.' " *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. . . . The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

---

[3]As noted earlier, La.R.S. 14:78.1 has since been repealed.

13

The fifth circuit, in *Lisotta*, 726 So.2d at 58, stated that the reviewing court should consider three factors in reviewing the trial court's sentencing discretion:

1. The nature of the crime,

2. The nature and background of the offender, and

3. The sentence imposed for similar crimes by the same court and other courts.

*State v. Whatley*, 03-1275, pp. 5-6 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 958-59.

The nature of the crime is obviously serious, as the victims were children.

Regarding the nature of the offender, we note the observations of the sentencing

court:

BY THE COURT:

All right, very well. As I stated, this is Number 80,351, "State of Louisiana versus Jerry Vaughn Clifton." Mr. Clifton, according to the information I have, is 76 years of age. Mr. Clifton was convicted by a jury on March 21st, I believe it was, of this year of two counts of aggravated incest. The facts of this case is that basically in August of 2001, Mr. Clifton engaged in an act of aggravated incest with a six year old minor who was his, basically, step-granddaughter. That same year in May of 2001, he engaged in also aggravated incest with another step-granddaughter who was eleven at that time, As I stated, he was tried by a jury and convicted of those two counts on March 21st, of this year. At that time I ordered a Pre-Sentence Investigation Report. I have received that report and have considered its contents. I've also considered all of the factors of Code of Criminal Procedure, Article 894. In this matter, while there may have been no economic harm to the victims, there was great harm to the two young girls, psychological harm. I've been to several conferences where these psychiatrists and psychologists tell us that these events scar these people for life. These two young girls came to court and very courageously gave their testimony, and I congratulate them for coming forward and doing that. There were no grounds to justify this defendant's conduct. He was a -- at that time approximately 60 years of age or a little older. This defendant has been married four times. He has grown children. He apparently is in very poor health. He has some extensive medical problems that he's been treated for for some time. To his credit, Mr. Clifton is retired from the U. S. Army. He had a very fine record of twenty years of service, was a Vietnam veteran. He

14

graduated from high school and did four years of voc tech education, has no history of drug or alcohol abuse, no history of any kind of alcohol or drug treatment in the past, and no past criminal record at all. It is just hard to imagine why a man with his past would engage in this kind of conduct. It does not appear from the seriousness of his conduct and the harm done by his conduct that any kind of probationary treatment of Mr. Clifton would be in any way justified. Any sentence lesser than the one that I'm going to give would seriously deprecate the nature of his offense.

So the sentence is as follows; on each count, Mr. Clifton is to serve sixty-one months at hard labor with the Louisiana Department of Public Safety and Corrections. He will, of course, be given credit for any time served since the date of his arrest, which I don't think he had any, or if he did, it was just a day or two. These sentences will run consecutive to each other. Both of these were separate events, not in any way related other than the two girls were, I believe, cousins. This is, of course, a sex offense and Mr. Clifton will be subject to the Sex Offender Reporting Requirements upon his release.

You're advised that your sentence -- with regard to your sentence, you may be entitled to diminution for good behavior. Your sentence has not been enhanced on the basis of the habitual offender law or any other Louisiana statute. Any appeal of this matter must be taken by oral motion made in open court or a written motion filed within 30 days of today's date. And any application for post-conviction relief must be filed within a period of two years from the time your sentence and conviction becomes final.

The defendant's background, as recited by the sentencing court, is positive; his health issues could also be seen as mitigating factors. Regarding the final *Lisotta/Whatley* factor, we note a survey of relevant jurisprudence from the fifth circuit:

The Second Circuit, in *State v. Rubalcava*, 28,325 (La.App.2nd Cir. 5 8/96), 674 So.2d 1035, upheld a 20 year sentence for aggravated incest where the defendant had fondled and performed oral sex upon his 8 year old step-granddaughter. In *State v. Blue*, 591 So.2d 1173 (La.App. 1st Cir.1991), the First Circuit held that, although defendant's conduct did not cause any physical harm to the victim, the charge resulted from a single incident and defendant had no prior criminal history, a 12 year sentence was not excessive upon a conviction for molestation of a juvenile. The trial court noted that the event caused emotional trauma to the victim, defendant's daughter. However, the Louisiana Supreme Court in *State v. Blue*, 591 So.2d 1172 (La.1992), overturned the decision, holding that: "the record of

15

sentencing does not demonstrate adequate compliance with LSA-C.Cr.P. art. 894.1 nor provide a factual basis for imposition of a near maximum term of imprisonment for the defendant, a first offender convicted for a single incident of molestation."

> In *State v. Orgeron*, 620 So.2d 312 (La.App. 5th Cir.1993) this Court concluded that concurrent sentences of 20 years imprisonment at hard labor for forcible rape, 20 years for aggravated oral sexual battery, and 15 years for molestation of a juvenile were not excessive. In imposing the sentences, the trial judge noted that defendant was the victim's stepfather, held a position of authority over her, the victim suffered serious emotional problems because of the assault and that defendant's mother was made aware of the abuse and chose to do nothing about it. Similarly in *State v. Anderson*, 95-1688 (La.App.3rd Cir. 5/8/96), 677 So.2d 480, the court held that two concurrent 15 year sentences for a first time offender convicted of aggravated incest were not excessive. The *Anderson* court found that the sentences were not excessive when the victim was defendant's fourteen year old stepdaughter and some of the acts were committed when the victim's mother was away. Recently, in *State v. Downs*, 30,348 (La.App. 2nd Cir. 1/21/98), 705 So.2d 1277, 1279, the Second Circuit held that a maximum sentence is appropriate for an offender who sexually abuses his minor child or stepchild.

*State v. Guidroz*, 98-377, pp. 18-20 (La.App. 5 Cir. 10/14/98), 721 So.2d 480, 489-90, *writ denied*, 98-2874 (La. 2/26/99), 738 So.2d 1061. More recently, this court approved a five-year sentence for attempted aggravated incest, along with a five-year sentence for molestation of a juvenile, for a first felony offender. *State v. H.A., Sr.*, 10-95, pp. 27-28 (La.App. 3 Cir. 10/6/10), 47 So.3d 34, 51. These cases indicate the defendant's sentence is not even close to being excessive. The sentence is very near to the statutory minimum for aggravated incest.

The defendant complains there was no evidence introduced into the record to show the victims suffered psychological harm. However, such evidence was not necessary to support the near-minimum sentence. The defendant engaged in sexual activities with his minor step-granddaughters. Although the record lacks evidence regarding the degree of psychological harm that each girl suffered, there can be no doubt that such harm occurred.

16

The defendant does not specifically complain regarding the sentences being consecutive, but the state observes the offenses involved separate acts against separate victims. The controlling statute is La.Code Crim.P. art 883, which states:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

In light of *Whatley*, the defendant's sentences are not excessive. Therefore, the assignment lacks merit.

## CONCLUSION

The convictions and sentences are affirmed.

**AFFIRMED.**