750 So.2d 1036 (1999)
STATE of Louisiana
v.
Steve P. HOTOPH.
No. 99-KA-243.
Court of Appeal of Louisiana, Fifth Circuit.
November 10, 1999.
*1040 John H. Brooks, Michael J. Rocks, Gretna, for Appellant Steve Hotoph.
Paul D. Connick, Jr., District Attorney, Richard Bates, Alison WallisCounsel of Record on Appeal, Assistant District Attorneys, Gretna, for Appellee State of Louisiana.
Panel composed of Judges CHARLES GRISBAUM, Jr., JAMES L. CANNELLA and SUSAN M. CHEHARDY.
CANNELLA, J.
The defendant, Steve P. Hotoph,[1] appeals his convictions of two counts of oral sexual battery and one count of aggravated incest. He also appeals his concurrent sentences of 15 years imprisonment at hard labor on each count. We affirm and remand.
On August 21, 1997 the defendant was charged by bill of information with one count of aggravated incest, a violation of La. R.S. 14:78.1, and two counts of oral sexual battery, violations of La. R.S. 14:43.3. He was arraigned and entered pleas of not guilty on September 16, 1997. The defendant's motion for production of a psychiatric report of the victim was denied after the trial court conducted an in camera review of the report and determined it contained no Brady evidence. After a two-day non-jury trial, the trial court found the defendant guilty as charged.
On October 20, 1998, the trial court sentenced the defendant to 15 years imprisonment at hard labor on each of the three counts, to be served concurrently. The defendant's motion to reconsider sentence was denied and he filed a timely appeal.

FACTS
The defendant was charged with committing oral sexual battery and aggravated incest upon his minor daughter, V.D.H.,[2] *1041 on separate occasions between June of 1996 and April of 1997. The following facts are derived from trial testimony.
V.D.H. testified that her parents divorced when she was nine or ten. She lived with her mother until she was thirteen, when in February of 1996 she went to live with the defendant and his girlfriend in Grand Isle. In the summer of that year her father had "a couple of talks about sex and things like that" with her. He told her that when he was fifteen he lived with a prostitute who "showed him the things that he knew and he felt that somebody needed to show them to [V.D.H.]."
V.D.H. said that the first incident took place after the defendant invited her to smoke marijuana with him. She agreed and he took her to Fourchon Beach, where they smoked marijuana together. After they returned home, the defendant told V.D.H. to go to his bedroom. She went to his bedroom and he came in shortly afterward and took off his clothes. He lay next to her and removed all her clothing. He then fondled her breasts and vaginal area and he made her fondle his penis. He made her perform oral sex upon him by forcing her head down to his penis and inserting the organ in her mouth. He also performed oral sex upon her.
About a week later, the defendant again fondled her and made her perform oral sex on him. That incident took place in the living room.
V.D.H. testified that the oral sex and fondling contacts were repeated around thirty times between July or early August of 1996 until a week or two before she was removed from the home in April of 1997. On one occasion the defendant not only performed oral sex on her and made her perform it on him, he also "got on top" of her as if he were going to have sex with her, but stopped when she told him that she didn't want to do any of those things.
V.D.H. stated that all of the incidents happened when she was home alone with the defendant, except one early morning incident during which his girlfriend was at home asleep.
V.D.H. testified that the first time she mentioned the situation to anyone else was in a phone conversation in late January or early February of 1997. At that time she disclosed to her friend A.D. that the defendant had molested her in the past. However, she told A.D. that it had stopped because she was afraid A.D. was going to tell someone. She told A.D. she didn't want her to tell anyone. She mentioned it to A.D. again on another occasion when they were going to get their nails done. V.D.H. also stated that her friend C.F. was aware of the abuse because C.F. was at A.D.'s house when V.D.H. told A.D. about the abuse.
V.D.H. testified that as incentive to perform sexual acts, her father would allow her to smoke marijuana and drink. Further, she said, when she performed sexual acts her father would "let her off punishment [grounding] early."
According to V.D.H., the last episode occurred one week prior to an incident in which the defendant grounded her for staying out all night. (She was attending a prom party and had permission to stay out until 1 a.m.) She testified that her father picked her up from the prom party on a Sunday morning, told her that she was grounded because of her behavior, and "made a comment that blow jobs weren't going to cut it anymore." He asked her if she knew what he meant and she answered in the affirmative. V.D.H. testified that she interpreted her father's comment to mean that she would have to have sexual intercourse with him. Based upon the comment, V.D.H. waited until A.D. could accompany her to her school principal to disclose the abuse.
V.D.H. testified that her father generally used a condom when he engaged in these sexual acts with her, although there were a few times he did not. In a conversation they had about sex and abstinence, he told her that he was going to buy a vibrator for her. She told him she didn't *1042 want one, but he said he was going to do it anyway. He later indicated he had purchased a vibrator for her, but he never gave it to her. She recalled this to be the day after the prom party, in the same conversation in which he told her a "blow job wouldn't cut it any more." She said he also mentioned a videotape to go along with the vibrator.
V.D.H. testified that she did not make up her story and that she never asked anyone to lie.
A.D. told the trial court that in February of 1997 V.D.H. told her she was being molested by her father. The first time V.D.H. revealed the abuse, she told A.D. it had stopped. A.D. advised V.D.H. to report the molestation, but V.D.H. told her not to say anything. A.D. stated that on a Monday at school, V.D.H. told her that the abuse had not in fact stopped and that she "had enough" and was ready to tell somebody. A.D. testified that V.D.H. was scared to go alone, asked A.D. to accompany her and admitted to the principal she had had oral sex with the defendant.
A.D. testified that V.D.H. would occasionally complain that the defendant was too restrictive. She told the trial court that V.D.H. never told her what to say about the matter, that they never discussed V.D.H. moving in with A.D.'s family and did not have a "plan" to get the defendant in trouble.
Rachael Kirkley of the Grand Isle Police Department testified that she knew V.D.H. from her participation in the DARE class in the community. Kirkley received information about the abuse from the principal at V.D.H.'s school. She attempted to contact V.D.H. by phone, but the defendant refused to let her speak to V.D.H. On April 29, 1997, Kirkley spoke to V.D.H. at the library, took an oral statement from her and prepared a statement for the family services social worker. Kirkley also set up a meeting between V.D.H. and the social worker. Kirkley testified that there had been no mention of abuse by V.D.H. prior to April of 1997.
Detective Florida Bradstreet of the Jefferson Parish Sheriff's Office testified that she learned of the case on April 28, 1997. Detective Bradstreet interviewed V.D.H., attempted to interview the defendant, and searched the defendant's home pursuant to a search warrant. The search disclosed condoms in the bedroom dresser drawers of both V.D.H. and the defendant, a booklet titled "Prime Time Sex: Why Older Men Make Better Lovers" in the living room, and a penis-shaped vibrator still in its unopened plastic carton. The vibrator was turned over to the detective by Osa R., defendant's live-in girlfriend. Detective Bradstreet was unable to find a videotape like that mentioned in V.D.H.'s statement. Based upon V.D.H.'s statement and the seized evidence, Detective Bradstreet arrested the defendant.
The defendant presented several character witnesses on his behalf. C.C., V.D.H.'s eighth grade friend, testified that whenever V.D.H. was punished, she would say that she "wanted to get her dad back and she didn't care how she had to do it, or how long it would take, that she was the only one that was going to put him away." C.C. stated that V.D.H. had asked her to pretend that she was aware of the molestation months in advance of when V.D.H. had actually revealed it to her. She also told the court that V.D.H. had a reputation for not being truthful. C.C. first said that her conversation with V.D.H. took place on the phone, but later stated the conversation took place at school. C.C. testified that V.D.H. never claimed to have made up the fact of the molestation.
Another friend of the victim, S.M., and her mother, Elizabeth M., testified that V.D.H. had lived with them from October through December of 1996 because the defendant was working offshore. Both testified that V.D.H. never seemed uneasy with her father and always seemed happy to see him. Both testified that V.D.H. complained that her father was too strict, but Elizabeth M. described those complaints as normal teenage complaints. In *1043 the community, both testified that V.D.H. had a bad reputation for being a liar and Elizabeth M. testified that the defendant had a general reputation for truthfulness.
Elizabeth M. further testified that she spoke to V.D.H. on the porch of the Grand Isle Police building on the day that V.D.H. reported the abuse. She said that V.D.H. told her, "My dad's been doing things to me that shouldn't have been done," but V.D.H. seemed relaxed and was smiling.
Defendant's friends and neighbors, Joycelyn Horton, Robert Rosiere, Stephanie Odom, Carrie Mallahan, and Harold Cheramie, testified that in the community V.D.H. had a reputation for being untruthful and that the defendant had a good reputation. Euris Dubois, a Grand Isle alderman, also testified that the defendant had a good reputation in the community. Finally, the State stipulated that the remaining defense witnesses, if called, would testify that they "have personal knowledge of both defendant and the victim, that the defendant is a pillar of the community and has a good reputation for truthfulness and the victim is a liar."
Brice R., Osa R.'s son, testified that he was a confidant to V.D.H., but that she never told him that she had been molested.
Osa R. testified she had lived with the defendant "off and on" for 18 years and that she had known V.D.H. since she was born and had a close relationship with her. She stated that she lived in the house with V.D.H. and the defendant over the time period when the abuse allegedly took place, but she never observed any reluctance by V.D.H. to be with her father. She never detected sexual odors in the house. She had looked for evidence to support V.D.H.'s allegations but found none. When asked about the objects seized from her home, she testified that the vibrator was a joke gift to her from the defendant, that the book was a catalog sent to her in the mail and that she had given the condoms to V.D.H.
Osa R. testified further that she examined V.D.H.'s clothing the morning after the prom party, that she told the defendant the results of her examination and that it was on that basis that the defendant punished V.D.H. She told the trial court she that was a light sleeper and slept in the bedroom next to V.D.H.'s room and, if the defendant were to leave bed and go into the next room, she would wake up. She also mentioned that she had dogs that barked if the defendant got up. She stated further that she worked variable hours and that the defendant and his daughter were often home alone.
The defendant testified on his own behalf. He stated that he is 63, a commercial fisherman and had returned to school to obtain a license to sail other types of vessels. In addition to V.D.H., he has an adult son and other daughters, plus stepchildren and grandchildren. He has no prior criminal record except for traffic violations. This is the first allegation of sexual abuse against him.
The defendant testified that V.D.H. came to live with him in February of 1996. He testified about the prom party incident that V.D.H. went to the party at 10:00 p.m., with a curfew of 1:00 a.m. Their usual procedure was that she would awaken her father when she came home. However, when the defendant awoke the next morning at approximately 6:00 a.m., she was not yet home. After making telephone calls to locate V.D.H., the defendant went to the Bridgeside Marina motel and found the remnants of a party, with alcohol bottles, cigarette butts, and the smell of marijuana. The defendant went into the back bedroom and found V.D.H. sleeping in a bed with a boy next to her. There were five boys and another girl sleeping in various locations in the room, with an additional five boys in an adjoining bedroom.
The defendant testified that V.D.H. was too drunk to walk, so he took her home, had Osa R. put her in the shower and took her to work. When he returned from taking V.D.H. to work, Osa R. showed him V.D.H.'s underwear and clothing, which was "slimy." The defendant stated he was "livid" in reaction to this evidence and he *1044 was flabbergasted that V.D.H. could destroy his reputation on the island. When V.D.H. returned home, he grounded her, took away her telephone privileges, and told her, "[i]f you step out of line to this magnitude again, we are going to prosecute those boys."
The defendant testified further that the vibrator seized from his home was one which he bought for Osa R. He denied having any sexual contact with his daughter and said that she was lying. The defendant testified that during the period in which V.D.H. testified she smoked marijuana with him, he was undergoing periodic job-related drug testing and none of those tests were positive.
Based on the foregoing the trial judge found the defendant guilty as charged. In pronouncing the verdict the trial judge stated, "The Court bases its decision solely on the witnesses and their credibility, or their lack of credibility.... [T]he Court did not find and does not consider that the testimony of the victim was unsupported. The Court feels that the testimony of the victim was supported by the evidence."
The defendant makes 16 assignments of error. We find little merit to any of the assignments, as discussed below. We have noted two patent errors which do not require reversal.
ASSIGNMENT OF ERROR NO. 1
The record evidence, viewed in the light most favorable to the prosecution, is insufficient for any rational finder of fact to have found the essential elements of the crimes proven beyond a reasonable doubt.
The defendant argues that the evidence presented at trial was not sufficient to convict the defendant. Specifically, the defendant alleges that the corroborating evidence at trial was not sufficient to support the credibility of the victim's testimony.
The constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The defendant was charged with aggravated incest, a violation of La. R.S. 14:78.1, and two counts of oral sexual battery, violations of La. R.S. 14:43.3.
La. R.S. 14:78.1 provides:
A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
B. The following are prohibited acts under this Section:
(1) Sexual intercourse, sexual battery, aggravated sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.
La. R.S. 14:43.3 provides:
A. Oral sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, when the offender either compels the other person to submit by placing the person in fear of receiving bodily harm, or when the other person has not yet attained fifteen *1045 years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.
The victim testified that the defendant had molested her when she was less than 15 years old. She described several instances of the abuse, testified that the defendant had engaged in oral sex with her and testified that the defendant had fondled her breast and genital area. She told the trial court that he engaged in similar sexual activity with her approximately 30 times. Although the defense presented controverting testimony and character evidence, the trial court found the victim's testimony to be credible.
The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Rowan, 97-21 (La.App. 5th Cir.4/29/97), 694 So.2d 1052, 1056. Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. State v. White, 472 So.2d 130, 132 (La.App. 5th Cir.1985).
The credibility of witnesses will not be reweighed on appeal. State v. Rowan, supra. "[T]he Jackson standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the fact finder at trial." State v. Juluke, 98-341 (La.1/8/99), 725 So.2d 1291, 1293.
The defendant argues, however, that the other evidence and testimony presented at trial did not corroborate the victim's testimony. He contends that "a review of the case law involving rape and sexual abuse has not disclosed a single case in which the testimony of an accusing witness stood alone to convict a defendant."
That assertion is erroneous. The testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Hawkins, 99-217 (La.App. 5th Cir 7/2/99), 740 So.2d 768; State v. Styles, 96-897 (La.App. 5th Cir.3/25/97), 692 So.2d 1222, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609. See also, State v. Hampton, 97-2096 (La.App. 1st Cir.6/29/98), 716 So.2d 417; State v. Campbell, 97-0358 (La.App. 4th Cir.5/20/98), 715 So.2d 488; State v. Ingram, 29,172 (La. App. 2nd Cir.1/24/97), 688 So.2d 657, writ denied, 97-0566 (La.9/5/97), 700 So.2d 505; State v. Johnson, 529 So.2d 466 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
The defendant points out inconsistencies within the victim's testimony and inconsistencies between the victim's testimony and other witnesses' testimony.
When a witness is impeached, this simply means the jury, as the trier of fact, is presented with evidence which it could consider and weigh in determining the credibility, or believability, of a witness. Simply because the witness may have been impeached by prior inconsistent statements does not mean that the jury is prohibited from believing anything said by the witness. The inconsistencies in the witness's statements are one of any number of factors the jury weighs in determining whether or not to believe a witness's trial testimony. State v. Bender, 598 So.2d 629 (La.App. 3rd Cir.1992), writ denied, 605 So.2d 1125 (La.1992).
State v. Dunn, 30,346 (La.App. 2nd Cir.2/25/98), 708 So.2d 512, 517.
The trial court heard the conflicting testimony of the victim and the defendant, yet found the victim's story credible. The facts presented by the victim were sufficient for a rational trial of fact to conclude beyond a reasonable doubt that the defendant committed the offenses. Accordingly, this assignment has no merit.

*1046 ASSIGNMENT OF ERROR NO. 2
Trial court erred by not allowing the defendant to confront his accuser.
ASSIGNMENT OF ERROR NO. 3
Trial court erred by not permitting defense questioning regarding the accusing witness' credibility and motive to fabricate the allegations.
ASSIGNMENT OF ERROR NO. 11
The trial court erred by not allowing evidence of the accuser's sexual activity for substantive purposes.
In these assignments the defendant argues that the trial court erred by not permitting the defendant to question V.D.H. victim or other witnesses about the victim's prior sexual behavior. The defendant argues that he was denied the right of confrontation and the right to present a defense.
The Sixth Amendment of the United States Constitution and Article I, § 16 of the Louisiana Constitution of 1974 guarantee an accused in a criminal prosecution the right to be confronted with the witnesses against him. The primary purpose behind this right is to secure for the defendant the opportunity for cross-examination. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).
Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. State v. Hillard, 398 So.2d 1057, 1059 (La.1981). The scope and extent of cross-examination is within the discretion of the trial judge, whose ruling will not be disturbed absent an abuse of discretion. State v. Garrison, 400 So.2d 874, 878 (La. 1981).
An accused also has a constitutional right to present a defense. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).
"The right of an accused rapist to present a defense is balanced against the victim's interests under the rape shield statute [La. C.E. art. 412], which is meant to protect the victim of rape from having her sexual history with persons other than the defendant made public ." State v. Everidge, 96-2665 (La.12/2/97), 702 So.2d 680, 684.[3] The rape shield law is intended to forbid evidence showing that the victim had voluntarily or involuntarily engaged in sexual activities with a person or persons other than the defendant. See State v. Everidge, supra; State v. Zierhut, 93-673 (La.App. 5th Cir.6/3/94), 631 So.2d 1378, 1381, writ denied, 94-0607 (La.6/3/94), 637 So.2d 500.
We find these assignments without merit for two reasons. First, the defendant did not follow the procedures set forth in La. C.E. art. 412 for raising the issue of prior sexual activity on the part of the victim of a sexually assaultive crime.
*1047 Article 412 provides that before a person accused of committing a crime that involves sexually assaultive behavior may offer evidence of the victim's past sexual behavior, the accused shall make a written motion to offer such evidence, accompanied by a written statement of evidence setting forth the names and addresses of persons to be called as witnesses. La. C.E. art. 412(C)(1). The motion shall be made within the time for filing pre-trial motions specified in Code of Criminal Procedure Article 521, except that the trial court may allow the motion to be made at a later date. La. C.E. art.412(D). After the motion is filed, the trial court determines the admissibility of the evidence at a hearing. La. C.E. art. 412(E).
In Michigan v. Lucas, 500 U.S. 145, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991), the United States Supreme Court upheld a similar notice and hearing requirement, finding it constitutional and noting that, to the extent that a rape shield statute operates to prevent a criminal defendant from presenting relevant evidence, the defendant's ability to confront adverse witnesses and present a defense is diminished, but this does not necessarily render the statute unconstitutional. 500 U.S. at 148, 111 S.Ct. at 1746. This rationale was followed by the Third Circuit in State v. Billings, 93-1542 (La.App. 3rd Cir.5/4/94), 640 So.2d 500, writ denied, 94-1437 (La.10/7/94), 644 So.2d 631.
In the present case, the defendant failed to make any such motion and, thus, waived the right to introduce any evidence of the victim's past sexual history.
Further, even had such a motion been made timely, it would have been denied on its merits. The defendant sought to introduce evidence that the 14-year-old victim was "sexually active" and had engaged in sexual activities with multiple partners at the prom party. His purpose in presenting the evidence was not to establish that another person was the source of semen or injury, nor was it intended to show consent of the victim. Rather, he sought to introduce testimony regarding a specific instance of the victim's alleged past sexual behavior as well as general evidence relating to the victim's past sexual behavior. This is precisely the type of evidence precluded by La. C.E. art. 412. State v. Everidge, supra; State v. Zierhut, supra.[4]
Accordingly, the trial court did not err by excluding testimony relating to the victim's alleged past sexual activity.[5]
ASSIGNMENT OF ERROR NO. 4
Trial court impermissibly limited defense questioning regarding credibility of accusing witness.
Defense counsel attempted to question V.D.H. about whether she had ever boasted in general about her ability to lie. The trial court limited cross examination in this area to questions relating to lying about the accusations in the case. The defendant argues that the trial court erred by limiting the questioning in this manner.
*1048 La. C.E. art.608(A) permits the credibility of a witness to be attacked or supported by evidence in the form of general reputation only, but subject to limitations. "Particular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness...." La. C.E. art. 608(B).
The defendant in this case wished to inquire specifically into a particular course of conduct of V.D.H., specifically, that she boasted about lying. Because the defendant's intention was to ask about specific acts of the victim, the trial court was correct in not allowing the defendant to ask the question. See State v. Ellis, 94-599 (La.App. 5th Cir.5/30/95), 657 So.2d 341, 353. Questions of relevancy and admissibility are discretion calls for the trial judge, whose determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. State v. Mosby, 595 So.2d 1135, 1139 (La.1992). Therefore, we find no merit to this assignment.
ASSIGNMENT OF ERROR NO. 5
Trial court erred by excluding defense testimony regarding [the victim's] stated intention to fabricate a story to get her father in trouble.
The defendant asserts the trial court erred by failing to admit the hearsay statement of V.D.H. into evidence for its truthfulness. During trial, V.D.H.'s friend, S.M., testified to the following:
She [the victim] always said that-well, this is toward whenever he was coming back home, and she said that if he was being too strict, she would make up a story and she knew exactly how to get him in trouble and she could trick anybody into believing it. And she told me this twice.
Prior to S.M.'s statement, the prosecution objected to the defense question on the ground of hearsay. The trial court ruled that the statement would be accepted "only for what was said and not for any truthfulness of it." On appeal, the defendant argues that this statement was a statement against interest as defined in La. C.E. art. 801(D)(2)(a) and therefore was not hearsay.
Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C .E. art. 801(A)(1), (C). Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802.
Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability. State v. Martin, 458 So.2d 454, 460 (La.1984). However, when an extrajudicial declaration or statement is offered for a purpose other than to establish the truth of the assertion, its evidentiary value is not dependent upon the credibility of the out-of-court asserter and the declaration or statement falls outside the scope of the hearsay exclusionary rule. Id.
A witness is generally competent to testify that a statement was made to him so long as no attempt is made to vouch for the credibility of its contents. State v. Batiste, 96-1010 (La.App. 5th Cir.1/27/98), 708 So.2d 764, 770.
The defendant cites State v. Huff, 27,212 (La.App. 2nd Cir.8/23/95), 660 So.2d 529, which states, "A statement offered against a party which is his own statement is a personal admission and is not hearsay by definition. LCE Art. 801D(2)(a)." The case at bar is distinguishable, however, because V.D.H. is not a party to the prosecution.
Accordingly, the statement was properly admissible only for the fact that it was made. If the statement had been admitted in order to prove the truth of the assertion, it would have been hearsay and properly excluded. The trial court's ruling on this matter was correct.
*1049 The defendant also complains that the trial court failed to let S.M. testify about an instance in which V.D.H. allegedly made up a story to get the witness in trouble. Again, the trial judge did not err. A witness's particular acts, vices, or courses of conduct may not be inquired into or proved by extrinsic evidence for the purpose of attacking her character for truthfulness. La. C.E. art. 608(B). Accordingly, evidence of this particular act of the victim would not be admissible.
ASSIGNMENT OF ERROR NO. 6
Trial court erred by admission of irrelevant prosecution exhibits and by repeatedly referring to exhibits not in evidence.
The defendant argues that State Exhibits S-4 and S-6 (the vibrator and the condoms) were irrelevant and, therefore, that the trial court erred by admitting them into evidence.
La. C.E. art. 401 provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." All relevant evidence is admissible, except as otherwise provided by law, and irrelevant evidence is not admissible. La. C.E. art. 402. The determination concerning relevancy of evidence is within the discretion of the trial judge, whose rulings will not be disturbed in the absence of an abuse of discretion. State v. Winfrey, 97-427 (La.App. 5th Cir.10/28/97), 703 So.2d 63, 76, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481.
The State was attempting to prove a pattern of the defendant's sexual relations with V.D.H., who testified that the defendant used condoms in the course of his sexual relations with her. She also testified that the defendant told her he had purchased a vibrator for her use. Because these objects were found in the search of the defendant's home, their existence tends to make the victim's allegations more probable. Therefore, the evidence was relevant.
ASSIGNMENT OF ERROR NO. 7
Appellant was prejudiced by the failure of the trial court to permit inspection by defense counsel of a report of the psychological examination of [the victim].
Pursuant to an Office of Community Services investigation, V.D.H. was evaluated by a psychologist. The defendant filed discovery requests to review the report, which were denied. The defendant assigns the refusal to allow him access to the report as error on appeal.[6]
La. R.S. 46:56(F)(8)(a) provides, "Case records involving investigation of reports of child abuse and neglect shall be confidential in order to protect the rights of the child and his parents or guardians. Information contained in such records shall only be made available as provided in this Section or applicable state or federal laws or regulations."
La. R.S. 46:56(H)(2) provides:
In the event of the issuance of a subpoena or subpoena duces tecum served upon the custodian of case records or other qualified witness or employee of the department in a civil action in which the department is not a party, or in any criminal proceeding, and such subpoena requires production for trial or discovery of any or all of the department's records, it shall be sufficient compliance if the custodian or other qualified employee delivers by registered mail or by hand a true and correct copy of all records described in such subpoena to the clerk of court or other tribunal, together with an affidavit of their authenticity, to be sealed by the court and made available only to the *1050 litigants, after an in camera inspection by the court for a determination of relevance and/or discoverability, who shall be bound by the limits of confidentiality. [Emphasis added]
Such reports are discoverable where they contain Brady material, that is, evidence favorable to the accused and material to his guilt or punishment. State v. Ortiz, 567 So.2d 81 (La.1990), citing Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
Brady held that the suppression of evidence by the prosecution which is favorable to the accused violates due process where the evidence is material either to guilt or punishment, regardless of whether the prosecutor is in good or bad faith.... The Brady rule applies to both exculpatory evidence and impeachment evidence.... Evidence is material only if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense.... A "reasonable probability" has been interpreted as "a probability sufficient to undermine confidence in the outcome."... The defense does not have to show the evidence would have resulted in a different verdict, but only that, despite its absence, there was a fair trial, a trial which results in a verdict worthy of confidence. [Citations omitted.]
State v. Strickland, 94-0025 (La.11/1/96), 683 So.2d 218, 234.
The trial court in this case performed an in camera inspection of the psychologist's report, as mandated by La. R.S. 46:56(H)(2). He found that it contained no Brady evidence and, therefore, ruled it was not discoverable. Our review of the report reveals no evidence that would exculpate the defendant or vitiate the truth of V.D.H.'s allegations. Accordingly, the trial court did not err by refusing to permit the defendant access to the report.
ASSIGNMENT OF ERROR NO. 8
The trial court erred by the exclusion of defense exhibits.
The defense attempted to offer into evidence a handwritten document which read as follows:
The Rules
1. The female makes the rules.
2. Under NO circumstances can the male know any of the rules.
3. If the female suspects that the male knows a rule the female must immediately change some or all of the rules.
4. The male must never be angry or upset, unless the female wants him to be angry or upset.
The defendant contends that this evidence was relevant to support the defense theory that V.D.H. was manipulative and had a premeditated plan to deal with her father to obtain her desires.
The initial authentication decision as to admissibility of evidence is made by the trial judge, using the standard set forth in the Code of Evidence: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." La. C.E. art. 901(A). "[I]t is a fundamental law of evidence that an article or substance which is introduced as demonstrative evidence, or to which a witness is asked to testify, must be sufficiently identified as the one involved in the occurrence in question." State v. Frisard, 96-368 (La.App. 5th Cir.4/29/97), 694 So.2d 1032, 1039.
The defendant did not establish the origin of this document or who wrote it and failed to authenticate it. This is a determination of relevancy of evidence within the discretion of the trial judge, whose rulings will not be disturbed in the absence of an abuse of discretion. State v. Winfrey, supra. There is no merit to this assignment.

*1051 ASSIGNMENT OF ERROR NO. 9
Trial court erred by not allowing Alderman Dubois to testify regarding the reputation of the accusing witness.
During trial, the defendant presented several witnesses to testify to the character of the defendant and V.D.H. One of these witnesses was Grand Isle Alderman Euris Dubois. Alderman Dubois testified to the character of the defendant, but on examination regarding V.D.H. he stated, "I've met her a couple of times, but I can't say I know her." The trial court then refused to let him testify to the character of V.D.H.
La. C.E. art. 608 states:
A. Reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of general reputation only, but subject to these limitations:
(1) The evidence may refer only to character for truthfulness or untruthfulness.
(2) A foundation must first be established that the character witness is familiar with the reputation of the witness whose credibility is in issue. The character witness shall not express his personal opinion as to the character of the witness whose credibility is in issue.
In State v. Terry, 94-0622 (La.App. 1st Cir.4/7/95), 654 So.2d 455, a witness testified that he lived in the community, knew the victim and had spoken with a few (three or four) unidentified people in the community about the victim's reputation for truthfulness. The First Circuit held that an insufficient foundation had been laid to admit the testimony of that character witness. Id. at 465.
The defendant failed to lay a proper foundation to ascertain that Alderman Dubois was familiar with V.D.H.'s reputation. The trial court's ruling, therefore, was correct.
ASSIGNMENT OF ERROR NO. 10
Trial court erred by failing to allow defense questions regarding improbability [sic] of allegations.
The defendant's live-in girlfriend, Osa R., was allowed to testify to the layout of the defendant's house, the size of the home, and the fact that the dogs would bark when the defendant got out of bed. She was not permitted, however, to answer the question, "[I]s it possible for Mr. Hotoph to have gotten up in the morning, walked down the hall, walked into her room and engaged in sexual acts with her and you not know about it?" The defendant argues that this ruling was in error, on the ground that a lay witness may make a natural inference from observed facts.
However, there was no defense objection to the trial court's ruling excluding the question. Accordingly, this issue was not preserved for appellate review. La. C.Cr.P. art. 841.
ASSIGNMENT OF ERROR NO. 12
Trial court erred by permitting the prosecution to engage in impermissible leading questions.
The defendant argues that the trial court erred by allowing the prosecutor to ask leading questions of V.D.H. The defendant specifies the following questions:
Q: Did your-did the defendant ever indicate to you that you could do things in order not to get grounded or punished?
Q. Did your dad ever suggest to you or indicate to you that you can-can do anything to get out of punishment or stop from being grounded?
Generally, the use of leading questions during the direct examination of a witness is improper unless authorized under the circumstances described in La. C.E. art. 611(C). "A leading question is one suggesting the answer that the witness is expected to give. However, a *1052 question calling for a `yes' or `no' response is not leading unless that question also suggests to the witness which of those responses to give." State v. Clayton, 570 So.2d 519, 527 (La.App. 5th Cir.1990).
Both of the challenged questions called for a "yes" or "no" answer and neither question suggested the answer the witness was expected to give. Accordingly, the trial court was correct in overruling the defendant's objections.
We do not consider the other questions mentioned in defendant's brief because his objections to those questions were sustained.
ASSIGNMENT OF ERROR NO. 13
The imposition of the sentence is unconstitutionally excessive as applied to this particular defendant.
By this assignment the defendant argues that his concurrent sentences of 15 years are excessive. He asserts the trial court failed to articulate the factors listed in La.C.Cr.P. art. 894.1 to justify the sentences imposed.
The Eighth Amendment to the United States Constitution and Article 1, § 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992).
In reviewing a sentence for excessiveness, this Court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence. A sentence within statutory limits will not be set aside as excessive absent manifest abuse of discretion.
State v. Bacuzzi, 97-573 (La.App. 5th Cir.1/27/98), 708 So.2d 1065, 1068-69.
The trial court should state for the record the considerations taken into account and the factual basis for imposing sentence. "Where the record clearly shows an adequate factual basis for the sentence imposed this court has held that remand is unnecessary, even where there has not been full compliance with Article 894.1." State v. Lanclos, 419 So.2d 475, 478 (La.1982).
The three factors the court should consider in reviewing a trial judge's sentencing discretion are the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes by the same court and other courts. State v. Telsee, 425 So.2d 1251, 1253-1254 (La.1983).
The penalty provision of La. R.S. 14:43.3 provides, "Whoever commits the crime of oral sexual battery shall be punished by imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than fifteen years." The penalty provision of La. R.S. 14:78.1 provides, "A person convicted of aggravated incest shall be find an amount not to exceed fifty thousand dollars or imprisoned, with or without hard labor, for a term not less than five years nor more than twenty years, or both."
The First Circuit considered a similar case, in which the defendant was convicted of aggravated incest upon his daughter, having sexual intercourse 15 times and oral sex two or three times. Because the defendant, "a mature adult, took advantage of his paternal relationship with his biological child and engaged in sexual relations with this child on a number of occasions over a substantial period of time without any regard as to the effect of his actions on this vulnerable young victim," the court found that sentences of 20 years, served concurrently, were not excessive for the first time offender. State v. Stiles, 31,854 (La.App. 2nd Cir.2/24/99), 733 So.2d 612.
*1053 In State v. Guidroz, 98-377 (La.App. 5th Cir.10/14/98), 721 So.2d 480, the defendant was convicted of aggravated incest for sexually abusing his young biological daughter over a 2 to 3 year period. That defendant was also a first-time offender. We held that the a maximum 20 year sentence was not excessive, referring to other similar cases in which 15 to 20 year sentences were imposed (State v. Anderson, 95-1688 (La.App. 3rd Cir.5/8/96), 677 So.2d 480; State v. Rubalcava, 28,325 (La.App. 2nd Cir.5/8/96), 674 So.2d 1035; State v. Orgeron, 620 So.2d 312 (La.App. 5th Cir.1993); State v. Downs, 30,348 (La.App. 2nd Cir.1/21/98), 705 So.2d 1277, 1279). Guidroz, 721 So.2d at 490.
When sentencing the defendant in the instant case, the trial court stated:
Let me say that when crimes of this nature occur, they have a lasting effect on a number of people, not just you. They have a lasting effect on someone you may be involved in a relationship with now, and they certainly have a lasting effect on the victim in the case. The some of the wounds never heal.
The defendant's maximum sentencing exposure in this case was 50 years if the sentences had been imposed consecutively, or 20 years if given the maximum but concurrent sentences.[7] In addition, a fine of up to $50,000 could have been imposed. Instead, he was given sentences of 15 years to be served concurrently and he was not fined. A review of the sentencing transcript reveals that the trial court was aware of the defendant's status as a first offender, the defendant's reputation in the community and the defendant's health concerns.
Considering the nature of the crime and the applicable jurisprudence, we cannot find the trial court abused its discretion by imposing concurrent sentences of 15 years upon this defendant.
ASSIGNMENT OF ERROR NO. 14
This Honorable Court should take independent judicial notice of accuser's out-of-state juvenile record.
The defendant asks this Court to take judicial notice of V.D.H.'s out-of-state juvenile adjudications. These adjudications were not offered into evidence at trial, however, therefore they cannot be considered on appeal.
Further, defendant has attached the unintroduced evidence to his appellate brief. Examination of exhibits attached to an appellate brief, but not offered into evidence at trial, is beyond the scope of our review. Davis v. St. Jude Medical Center, Inc., 94-353 (La.App. 5th Cir.10/25/94), 645 So.2d 771, writ denied, 94-2864 (La.1/27/95), 649 So.2d 387. An appellate court is precluded from considering evidence which is not part of the record. State v. Pertuit, 95-935 (La.App. 5th Cir.3/13/96), 673 So.2d 1055.
Further, we cannot comply with the defendant's request that we take judicial notice of this out-of-state court record. La. C.E. art. 201(A) provides that the court may take judicial notice of adjudicative facts. An adjudicative fact is a fact normally determined by the trier of fact and must be one that is not subject to reasonable dispute. La. C.E. art. 201(A)(B). Such a fact either must be generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. La. C.E. art. 201(B).
A court may take judicial notice of its own proceedings. State v. Batiste, 96-0526 (La.App. 3rd Cir.12/11/96), 687 So.2d 499, 503, writ denied, 696 So.2d 1003 (La.1997). However, there is no provision *1054 in Louisiana law for a court of this state to take judicial notice of suit records in other courts. Sternberg v. Smith, 385 So.2d 469, 470 (La.App. 1st Cir.1980). To be considered, documents of other courts must be introduced as evidence in the record in the trial court. Mattox v. American Indem. Co., 259 So.2d 79, 81 (La.App. 4th Cir.1972).
Accordingly, it would be improper for this Court to take judicial notice of the victim's prior juvenile adjudications. The defendant's request is denied and we find no merit to this assignment.
ASSIGNMENT OF ERROR NO. 15
The trial court erred by allowing the prosecutor to make improper remarks in his closing argument.
The defendant argues that the prosecutor made prejudicial remarks during his closing argument concerning delayed disclosure of childhood sexual abuse and the reluctance of family members to believe that abuse has occurred. Specifically, the prosecutor commented:
Then, of course, he wants to suggest that the delay in disclosure is in some way unusual. Well, that's actually indicative of molestation. You have children that are molested from the age of three and four and five, and the disclosure is not made until their late twenties and late thirties.
Further, discussing the defendant's girlfriend, Osa R., the prosecutor said:
[S]he doesn't even want to accept what he's done. And that's not unusual. You have biological mothers that go into denial when their children are molested by their husbands. It's not unusual for this woman not to want to believe this child. It's not unusual at all.
La.C.Cr.P. art. 774 provides that the argument is to be confined "to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." It prohibits appeal to prejudice and confines the state's rebuttal to answering the argument of the defendant.
However, the defendant did not make a contemporaneous objection to those remarks. La.C.Cr.P. art. 841(A) provides that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity so that he may cure the problem and to prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection. State v. Soler, 93-1042 (La.App. 5th Cir.4/26/94), 636 So.2d 1069, 1074, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450 and 94-1361 (La.11/4/94), 644 So.2d 1055.
Defendant acknowledges that there were no contemporaneous objections, but urges this Court to review the issues nonetheless, arguing that appellate review is appropriate in these instances absent contemporaneous objections.
Jurisprudential exceptions to the contemporaneous objection rule allow statements made during a prosecutor's closing argument to be considered on appeal despite the absence of objection at trial. The standard is whether the remarks were so extremely inflammatory and prejudicial that allowing the verdict to stand would seriously affect the fairness, integrity or public reputation of judicial proceedings. State v. Hayes, 364 So.2d 923, 926 (La.1978); State v. Colligan, 95-880 (La.App. 3rd Cir.8/7/96), 679 So.2d 184, 189. This Court has followed that ruling on occasion. See State v. Rochon, 98-717, p. 2 (La.App. 5th Cir.3/10/99), 733 So.2d 624; State v. Francis, 95-194 (La.App. 5th Cir.11/28/95), 665 So.2d 596, 603.
Reviewing the remarks in light of the evidence and bearing in mind that this was a bench trial rather than a jury trial, we find no evidence these remarks influenced the trial court or contributed to the verdict. *1055 The remarks do not rise to the level of "extremely prejudicial and inflammatory," so as to warrant reversal.
ASSIGNMENT OF ERROR NO. 16
The errors in this case cumulatively mandate reversal.
The defendant argues that the cumulative error in this case requires reversal. A careful examination of the assigned errors in this case and a review of the record, however, has revealed no reversible error. The Louisiana Supreme Court has been "unwilling to say that the cumulative effect of assignments of error lacking in merit warrants reversal of a conviction or sentence." State v. Strickland, 94-0025 (La.11/1/96), 683 So.2d 218, 239; State v. Tart, 93-0772 (La.2/9/96), 672 So.2d 116, 154, cert. denied, 519 U.S. 934, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996); State v. Sheppard, 350 So.2d 615, 651 (La. 1977). A defendant is not entitled to a perfect trial, only a fair one. Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968); State v. Martin, 550 So.2d 568 (La.1989).
Accordingly, we find no merit to the "cumulative error" argument.

ERROR PATENT DISCUSSION
Pursuant to our usual procedures, the record was reviewed for errors patent, according to La.C.Cr.P. art. 920. We find two patent errors which require correction.
At the time of sentencing the trial court failed to inform the defendant of the prescriptive period within which to apply for post-conviction relief as required by La.C.Cr.P. art. 930.8. This Court may remedy the error by ordering the trial court to send written notice of the prescriptive period to defendant within ten days of the rendering of this Court's opinion, then filing written proof in the record that defendant received such notice.
We also note that the defendant's sentences on the two counts of oral sexual battery are illegally lenient because they were imposed without restricting the defendant's parole eligibility. La. R.S. 14:43.3. However, the State did not preserve its right to appeal the sentence by either filing a motion to reconsider sentence or making a timely objection. La. C.Cr.P. arts. 881.2(B), 881.1(D). Appellate courts are prohibited from acting to correct illegally lenient sentences where the prosecution has failed to preserve the issue for appeal. State v. Fraser, 484 So.2d 122, 124 (La.1986). Accordingly, this Court may not act on defendant's illegal sentence.
For the foregoing reasons, the defendant's convictions and sentences are affirmed. The case is remanded to the trial court, who is ordered to send the defendant written notice of the prescriptive period for post-conviction relief, as set out La.C.Cr.P. art. 930.8, within ten days of the rendering of this opinion and to file written proof in the record that defendant received such notice.
AFFIRMED AND REMANDED WITH INSTRUCTION.
NOTES
[1] The defendant's name appears as "Steve P. Hotoph" on the bill of information, the pleadings and the commitment, but as "Peter Steven Hotoph" in the transcript.
[2] We use initials to protect the identity of the victim and those witnesses who were juveniles at the time of trial, as well as initials for last names of the adults related to them.
[3] The rape shield law is found in La. C.E. art. 412, which states in pertinent part:

"A. Opinion and reputation evidence. When an accused is charged with a crime involving sexually assaultive behavior, reputation or opinion evidence of the past sexual behavior of the victim is not admissible.
B. Other evidence; exceptions. When an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim's past sexual behavior is also not admissible except for:
(1) Evidence of past sexual behavior with persons other than the accused, upon the issue of whether or not the accused was the source of semen or injury; provided that such evidence is limited to a period not to exceed seventy-two hours prior to the time of the offense, and further provided that the jury be instructed at the time and in its final charge regarding the limited purpose for which the evidence is admitted; or
(2) Evidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior.
* * * * * *
F. Past sexual behavior defined. For purposes of this Article, the term "past sexual behavior" means sexual behavior other than the sexual behavior with respect to which the offense of sexually assaultive behavior is alleged."
[4] The defendant relies upon State v. Vaughn, 448 So.2d 1260, 1262 (La.1983), for the proposition that "cross-examination is permitted of an accusing witness regarding instances of sexual conduct with a person other than the defendant." We note, however, that the portion of the language which defendant quotes from Vaughn is from the original decision reversing the conviction (448 So.2d at 1260-1263), which was superseded by a decision on rehearing that affirmed the conviction (448 So.2d at 1266-1268).

Further, this case is distinguishable because the defendant here was not attempting to show the victim had a pattern of consensual sex with him; rather, he was trying to present reputation evidence of the victim's past sexual activities with others.
[5] The trial judge allowed testimony to establish that the defendant had accused the victim of having sex with multiple partners on the night of the prom. Over objection, the victim testified that she did not have sex with multiple partners. Prior to the State's objection being raised, the defendant affirmatively answered the question, "[D]id anyone tell you that she [V.D.H.] was sexually active?"
[6] The defendant also assigns as error the fact that the report was not provided to this Court. That portion of the assignment is moot because a copy of the sealed report has been provided to us pursuant to our order.
[7] La. R.S. 14:78.1(D) provides, "A person convicted of aggravated incest shall be fined an amount not to exceed fifty thousand dollars, or imprisoned, with or without hard labor, for a term not less than five years nor more than twenty years, or both." La. R.S. 14:43.3(C) states, "Whoever commits the crime of oral sexual battery shall be punished by imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than fifteen years."