| .CLARENCE E. McMANUS, Judge.
In this matter, we affirm the defendant’s conviction of battery of a police officer, but remand for correction of one patent error.
STATEMENT OF THE CASE
On December 28, 2000, the defendant, Richard Breaux, was charged by bill of information with battery of a police officer requiring medical attention in violation of LSA-R.S. 14:34.2. The defendant was arraigned on January 11, 2001, and he entered a plea of not guilty. On November 6, 2001, the defendant waived his right to a trial by jury, and a bench trial was held. At the conclusion of the bench trial, the trial court found the defendant guilty as charged.
On December 17, 2001, the defendant filed a motion for new trial, which was denied by the trial court on January 10, 2002. After the defendant waived sentencing delays, the trial court sentenced the defendant to two years of imprisonment at hard labor on January 10, 2002. The State then filed a multiple offender bill alleging that the defendant was a second felony offender because he had pled guilty and was sentenced on September 23, 1996 for felon in possession of firearm in violation of LSA-R.S. 14:95.1 in ease No. 96-5445, Division “B”, of the Twenty-Fourth Judicial District Court of Jefferson Parish. On January 10, |a2002, the defendant agreed with the allegations in the multiple bill. The trial court vacated the two-year sentence and sentenced the defendant as a second felony offender to two and one-half years of imprisonment at hard labor. On January 14, 2002, the defendant filed a motion for appeal, which was granted on January 25, 2002.
FACTS
Deputy James McDowell of the Jefferson Parish Sheriffs Office testified that, on October 15, 2000 at 2:12 a.m., he was working a paid detail at Schnell’s Restaurant on Fourth Street. McDowell stated that he was in full uniform that evening. According to McDowell, Vicky Alio, an employee of Schnell’s, was seated at a table next to him. McDowell stated that he observed the defendant walk into the restaurant and approach Alio. McDowell testified that the defendant made eye contact with him. The defendant then ordered Alio out of the restaurant, stating, “Get outside.” McDowell explained that Alio appeared upset and walked out of the restaurant through the glass doors with the defendant following behind her.
McDowell testified that he watched the two exit the restaurant and witnessed the defendant strike Alio from behind with his fist. According to McDowell, the defendant continued to strike Alio on the head, she tried to fight back and McDowell jumped up from his table and ran outside to assist Alio. As he exited the restaurant, he yelled “Hey.” McDowell testified that the defendant looked back at him and swung, striking him in the left temple and *465 knocking off his glasses. McDowell then subdued the defendant and handcuffed him. He stated that the defendant continued to fight while he handcuffed him on the ground. McDowell stated that he received injuries to his left eye and his shin. He also stated that the wounds to his person were bleeding and that he had to replace his eyeglasses. He was treated by a West Jefferson Hospital ambulance. McDowell identified the | defendant in court as the person who hit him outside of Schnell’s Restaurant that night.
On cross-examination, McDowell stated that, prior to the defendant arriving at the restaurant, Alio entered the restaurant and sat down at a table next to him. According to McDowell, she threw her cigarette pack on the table and appeared to be upset. He overheard Alio stating to the other girls sitting at the table, “I caught him with the b_: — with the b_”
Amy Martin testified that, on October 15, 2000, she was employed as an emergency medical technician for West Jefferson Hospital and that, she and her partner, Charlie Hausler, were called out to Schnell’s Restaurant on Fourth Street. She gave medical assistance to. McDowell that evening. Martin testified that McDowell had an abrasion to the inside of his left eye that was slightly bleeding. She also testified that there was a cut over the right eye and an abrasion to the knee, and both were slightly bleeding. Martin stated that she cleaned the wounds and bandaged them. According to Martin, McDowell was in full police uniform.
On cross-examination, Martin stated that the defendant’s blood pressure and heart rate were unusually high. She also stated that they offered to bring him to the hospital, but the defendant refused. Alio testified for the defense at trial. She stated that she and the defendant had been living together for the past 11 years and also had one child together. According to Alio, on October 15, 2000 around 2:00 a.m., the defendant entered the restaurant and approached her. She explained that she was on her break, and that the defendant was mad because she had taken some money that belonged to him. She also stated that they were having some family problems. She testified that she did not recall throwing her cigarettes down on the table nor telling her coworkers that she had caught the defendant with another woman.
| ¡Alio stated that the defendant told her, “Let’s go outside.” According to Alio, as she exited the restaurant,' the defendant grabbed her behind the head and that her eyeglasses fell from her face. She stated that, as the defendant bent down to pick up her eyeglasses, McDowell ran out of the restaurant and jumped on the defendant’s back. According to Alio, when McDowell ran outside, he yelled, “no moth-erf_, you’re not going to do that here.” Alio testified that McDowell never identified himself as a police officer. She also testified that the defendant did not punch her, nor did she see the defendant strike the police officer. Alio stated that, when McDowell handcuffed the defendant, he threw the defendant on the ground. She also stated that McDowell got mad at her because she would not sign a domestic violence paper. Alio testified that she never saw McDowell’s eyeglasses fall off his face.
The defendant testified at trial and stated that he did not strike McDowell. The defendant admitted that he knew that McDowell worked at Schnell’s Restaurant on Fridays and Saturdays. According to the defendant, when he and Alio exited the restaurant, he went to “pop” her on the back of the head or back. He stated that when Alio exited the restaurant and stepped off the curb, her eyeglasses fell *466 from her face. The defendant bent down to grab her eyeglasses when someone tackled him from behind. The defendant claimed that when he noticed a white-headed person on him, he knew it was the police. He stated that he then dropped down, closed his eyes, and put his hands behind him.
The defendant stated that he was then handcuffed. According to the defendant, McDowell handcuffed him, picked him up, grabbed his jacket, threw it over his head, and then threw him to the ground. The defendant testified that he did not hear the police officer approaching him. He also testified that he had never physically abused Alio in the past.
I «ASSIGNMENT OF ERROR NUMBER ONE
The defendant contends that the verdict of guilty of battery upon a police officer was contrary to the evidence because the State failed to prove beyond a reasonable doubt that the injuries were the direct result of the defendant’s actions. The defendant specifically claims that McDowell’s injuries were the result of his own actions when he interfered in a private argument and tackled the defendant from behind.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1293; State v. Williams, 99-223 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 608.
The defendant was charged with battery upon a police officer under LSA-R.S. 14:34.2, which states:
A. (1) Battery of a police officer is a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a police officer acting in the performance of his duty.
(2) For purposes of this Section, “police officer” shall include commissioned police officers, sheriffs, deputy sheriffs, marshals, deputy marshals, correctional officers, constables, wildlife enforcement agents, state park wardens, and probation and parole officers.
(3) For purposes of this Section, “battery of a police officer” includes the use of force or violence upon the person of the police officer by throwing feces, urine, blood, saliva, or any form of human waste by an offender while the offender is incarcerated by a court of law and is being detained in any jail, prison, correctional facility, juvenile institution, temporary holding center, halfway house, or detention facility.
B. (1) Whoever commits the cxáme of battery of a police officer shall be fined not more than five hundred dollars and imprisoned not |7less than fifteen days nor more than six months without benefit of suspension of sentence.
(2) If at the time of the commission of the offense the offender is under the jurisdiction and legal custody of the Department of Public Safety and Corrections, or is being detained in any jail, prison, correctional facility, juvenile institution, temporary holding center, halfway house, or detention facility, the offender shall be fined not more than one thousand dollars and imprisoned with or without hard labor without benefit of parole, probation, or suspension of sentence for not less than one year nor *467 more than five years. Such sentence shall be consecutive to any other sentence imposed for violation of the provisions of any state criminal law.
(3) If the battery produces an injury that requires medical attention, the offender shall be fined not more than one thousand dollars or imprisoned with or without hard labor for not less than one year nor more than five years, or both.
This Court in State v. Richson, 501 So.2d 885, 886-887 (La.App. 5 Cir.1987) (citing LSA-R.S. 14:33, 14:34.2; State v. Williams, 448 So.2d 753 (La.App. 2 Cir. 1984)), states:
The essential elements of the crime of battery of a police officer are as follows:
1. The intentional use of force or violence upon the person of a police officer, or the intentional administration of a poison or other noxious liquid or substance to a police officer;
2. without the consent of the victim;
3. when the offender has reasonable grounds to believe the victim is a police officer acting in the performance of his duty.
It appears that all of the essential elements of a battery upon a police officer have been met. First, McDowell testified that when he exited the restaurant to assist Alio, the defendant turned around, looked at him, and struck him in the face. This punch caused McDowell’s eyeglasses to fall from his face and also caused a cut to his eye. Further, McDowell stated that the defendant continued to fight him when he tried to handcuff the defendant on the ground. Second, this intentional use of force by the defendant was conducted without the consent of McDowell. Finally, the record indicates that the defendant knew that McDowell was acting in performance of his duties as a police officer. Both McDowell and Amy Martin ^testified that McDowell was in full uniform. Also, the defendant admitted that he knew that McDowell worked at Schnell’s Restaurant as a police officer on Fridays and Saturdays.
Both the defendant and Alio testified that the defendant did not strike the police officer outside of Schnell’s Restaurant. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062, and 00-0150 (La.6/30/00), 765 So.2d 1066. It is not the function of the appellate court to assess credibility or re-weigh the evidence. Id. Clearly, the trial judge believed the testimony of McDowell.
The bill of information alleges that the defendant committed a battery upon a police officer that required medical attention under paragraph B(3) of LSA-R.S. 14:34.2. The defendant argues that the minor wounds of McDowell did not suggest that medical assistance was necessary.
The Louisiana Supreme Court described the meaning of an injury which requires medical attention under LSA-R.S. 14:34.2 in State v. Boyd, 97-0579 (La.4/14/98), 710 So.2d 1074. The Supreme Court stated:
We find that “an injury which requires medical attention” is an injury where the battered officer receives a battery for which the attention of a medical professional (nurse, paramedic, doctor, etc.) is required. For example, while a simple scratch normally would not require medical attention, a scratch, bite or needle prick where the officer is possibly exposed to a disease which necessitates testing would be sufficient to require medical attention.
State v. Boyd, 710 So.2d at 1077.
In this case, Amy Martin, who administered medical treatment to McDowell, tes *468 tified that all three wounds were bleeding. She specifically stated that a bandage was placed over McDowell’s eye because of a puncture wound in the crease of the eyelid near the eyeball. Martin testified that there was a potential for 19eye damage due to the location of the injury. McDowell testified that after his eye was cleaned, Martin examined his eye with a light to insure that no glass particles from his eyeglasses were on the eyeball. Based on this testimony, it appears that the bleeding wounds and cut to his eyelid near the eyeball necessitated professional medical treatment.
Based on the above, we find that the trial court verdict is not contrary to the law and evidence presented. Therefore, we affirm the defendant’s conviction of battery on a police officer.
ERROR PATENT REVIEW
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990). We note the following error for review.
At sentencing, the trial court failed to properly advise defendant of the prescriptive period for post-conviction relief as required by LSA-C.Cr.P. art. 930.8 after imposing the enhanced sentence. However, the minute entry indicates that the trial judge informed the defendant of the prescriptive period. When there is a conflict between the transcript and the minute entry, the transcript prevails. State v. Lynch, 441. So.2d 732, 734 (La.1983). Thus, the matter should be remanded to the trial court to inform the defendant of the prescriptive period by sending written notice to defendant within ten days of the rendition of the opinion and to file written proof in the record that defendant received such notice. State v. Cordero, 99-444 (La. App. 5 Cir. 6/1/99), 738 So.2d 84, 93, writs denied, 99-1877 (La.11/24/99), 750 So.2d 981 and 99-1878 (La.11/24/99), 750 So.2d 981.
For the above reasons, we affirm the defendant’s conviction of the battery on a police officer and remand with instructions.
AFFIRMED; REMANDED FOR CORRECTION OF PATENT ERROR.